# BOARD OF COUNTY COMMISSIONERS OF CARBON COUNTY v. ROLLINS & SONS.

COUNTIES—REFUNDING BONDS—RESERVED QUESTIONS.

1. A general reservation of the questions involved in a case without stating them is not ordinarily sufficient for their consideration by the supreme court under the statute authorizing district courts to reserve important and difficult questions for the decision of the supreme court; but where, in an agreed case, the stipulation stated the question at issue and what was deemed by the parties to be the question to be determined, the court heard and decided it, saying, however, that the better practice in all cases is for the district court to set forth in its order of reservation the specific questions reserved.

2. Under the statute authorizing a county to issue bonds to pay, redeem, fund, or refund the principal and interest of any indebtedness of the county, the power is not exhausted by one issue of funding bonds, so as to prevent the county from issuing new bonds at a lower rate of interest and for the benefit of the county, to refund funding bonds previously issued under the same statute. (R. S., Sec. 1209.)

3.   The provision of a subsequent section of the same act (R. S., Sec. 1213) requiring the annual levy of a tax to pay the interest on the bonds issued under the authority of the statute, and a further tax in time to provide means to pay the bonds as they become due, does not modify or restrict the general and comprehensive authority of Section 1209 for the issuance of bonds; since the practical effect of the issue of refunding bonds is the postponement of the time of payment, and the tax provision will apply to the new bonds. The meaning of the two provisions taken together is that existing bonds may be redeemed by the issuance of refunding bonds, or a tax shall be levied to provide means for their payment.

4.   The prohibition of Section 7 of the county bonding act (L. 1888, Ch. 27) upon the appropriation of money or issue of warrants or other certificates of indebtedness in the absence of money in the county treasury, after the funding of indebtedness under the authority of the act, did not operate, and were not intended to operate, to restrict the refunding of a valid debt, previously funded under the act. Neither is Ch. 33, L. 1893 (Sections 1216 and 1217, R. S.) inconsistent with the statute authorizing refunding bonds.

5.   The board of county commissioners of a county has authority in proper cases to issue and dispose of refunding bonds, to refund funding bonds theretofore issued under the provisions of Section 1209, Rev. Stat., notwithstanding that the former bonds to be refunded were issued under the authority of the same statute.

[Decided October 8, 1900.]

RESERVED questions from the District Court, Carbon County, HON. RICHARD H. SCOTT, Judge of the First District, presiding.

The case is fully stated in the opinion.

*Homer Merrell*, for plaintiff.

*Daniel E. Parks*, for defendant.

POTTER, CHIEF JUSTICE.

This is an agreed case submitted to the district court pursuant to the provisions of Section 3662, Revised Statutes. Upon the hearing the questions involved being

deemed important and difficult, were reserved for the decision of this court by authority of the statute permitting the district court to reserve for the decision of the supreme court an important or difficult question arising in an action or proceeding pending in such district court. R. S., Secs. 4276–4278.

By the submission of the agreed case, the parties seek the judgment of the court, respecting the duty and liability of the defendant under a contract for the purchase of certain refunding bonds issued by the plaintiff, and it is stipulated that should the bonds be held lawful and valid obligations of the county, then and in that case judgment may be given and entered for the plaintiff, requiring defendant to receive and pay for said bonds according to the terms of said contract of purchase; but if they should be held to be invalid, judgment may be entered for defendant, cancelling the contract and discharging defendant from its performance.

The contract between the parties relates to refunding bonds of the county of Carbon in the sum of $14,400, issued for the purpose of refunding certain of its outstanding and unpaid valid and lawful funding bonds. It appears that the funding bonds, so to be refunded, were issued August 1, 1890, to fund and redeem its outstanding valid warrants which had been issued prior to the adoption of the State constitution, to wit, July 10, 1890.

Prior to statehood an act of Congress had restricted the creation of county indebtedness to four per centum upon the assessed value of the taxable property in the county; and the constitution reduced the limitation to two per centum, but expressly provided that previous indebtedness within the said congressional limitation might be bonded. Art. 16, Sec. 3. The agreed statement recites the validity of the funding bonds issued to redeem the indebtedness existing at the time of the adoption of the constitution. It appears also and is set forth in the agreed case, that said funding bonds of 1890 were issued in pursuance of the authority conferred by, and in strict compliance with,

certain acts of the Legislature authorizing the issuance of
county bonds; viz.: An act approved March 2, 1888, enti-
tled, "An act authorizing the redemption of county in-
debtedness," as amended by an act approved March 5,
1890, which amended and re-enacted Section 1 of the act
of 1888.

The refunding bonds in controversy are issued under
and by authority of the same statute laws, and the ques-
tion presented in the case relates to the power of the county
to issue refunding bonds to pay and redeem the funding
bonds previously issued under the same statutory provis-
ions; and the extent of the authority conferred in the
premises by the statute referred to.

The order of the district court sending the case here
reserves generally the questions involved in the case for
the decision of this court without a specific statement of
what those questions are. Ordinarily it is clear that
such a general reservation would be insufficient to pre-
sent any question to this court for consideration. In
Corey v. Corey, 3 Wyo., 210, it was said, "We con-
ceive it to be indispensable to any action by this court
that the question which it is conceived to be difficult or
important should be specially stated by the district court,
and without such statements this court has no power to
consider any question which may arise in the case." The
reason for that is obvious. The statute does not contem-
plate that this court shall sift the record or proceedings to
ascertain the possible questions arising in the case. The
district court should distinctly state the question found to
have arisen in the case, and deemed to be either important
or difficult or both.

In the case at bar, however, the agreed statement of
facts upon which the case was submitted sets forth dis-
tinctly in its last paragraph what is conceived by the
parties to be the chief question involved in the action.
We think it evident that the court had reference to that
question in its order of reservation, and it is entirely
probable that as the question involved was specifically so

stated by the parties in their written stipulation, a repetition was thought unnecessary. And that statement may be treated as the statement of the court. To the extent that the question is set out in the agreed statement, we are inclined to regard the reservation sufficient, and will therefore consider and determine that question. Nevertheless, we think the better practice in all cases is for the court's order to contain a specific statement of the questions reserved.

The question thus reserved in this case is as follows:

" Had and has the said plaintiff the power and authority to issue and dispose of said refunding bonds under said constitution and laws, as aforesaid, and do said constitution and laws authorize the issuance and disposition of refunding bonds to *refund funding bonds* theretofore issued under said constitution and laws as aforesaid ? "

The objection of defendant to the bonds is set out in the written stipulation of the parties as follows :

"That the said defendant refuses to perform the said contract on its part, and refuses to accept and pay for the said bonds so tendered to them by said plaintiff, as aforesaid, for the reason and upon the ground that the said refunding bonds are invalid in law, unlawful and void, and unlawfully issued by said plaintiff, and in this, to wit, that said refunding bonds were and are issued under the same said acts and law under which the said funding bonds were and are issued to refund the said funding bonds, and that said acts and laws do not contemplate, and do not authorize the issuance of refunding bonds to refund funding bonds issued under said acts and laws, but that said acts and laws provide and contemplate that all funding bonds issued thereunder shall be paid and redeemed in lawful money, raised by taxation, under said acts and laws, and that after the issuance of funding bonds thereunder no certificate of indebtedness, bond or bonds shall, can, or may be issued by a county of the State of Wyoming thereunder, or under any other law of

said State of Wyoming lawfully, unless there be money not otherwise appropriated in the county treasury at the time. That Section 7 of the said act of March 2, A. D. 1888, provides that:

'After the funding of the indebtedness of any county under the provisions of this act, it shall be unlawful for the county commissioners of such county to make any appropriation of money, or issue, or cause to be issued, any warrant or other certificate of indebtedness, unless there be money not otherwise appropriated in the county treasury at the time of making such appropriation; and any violation of the provisions of this section on the part of the county commissioners of such county, shall be deemed a misdemeanor, and upon conviction thereof, any such county commissioner shall be punished by a fine of not more than five hundred dollars, or by imprisonment in the county jail for not more than six months, or by both such fine and imprisonment, in the discretion of the court,' which law in effect prohibits the issuance of said refunding bonds so issued and tendered to defendant by said plaintiff, and renders the said refunding bonds invalid and void in the hands of all persons to whom they might come.''

The proposition advanced by the objections is that the authority of the county to issue its bonds was exhausted by the one issue of funding bonds in 1890.

So far as the authority conferred upon a county to issue bonds is concerned, the act of 1888 was not changed by the amendment of 1890, except as to the amount thereof, and that change is not material to the present inquiry. Section 1 of the act of 1888, as originally enacted and also as amended in 1890, and carried into the late revision (Section 1209), and still in force, provides that "The board of county commissioners of any county may issue negotiable coupon bonds of their county for the purpose of paying, redeeming, funding or refunding the principal and interest of any indebtedness of their county

when the same can be done at a lower rate of interest and to the profit and benefit of the county."

We understand that the new or refunding bonds are issued at a lower rate of interest than that borne by the funding bonds proposed to be refunded, although the stipulation is silent as to that matter. However, as no objection to the bonds is made upon any such ground, it may be assumed that the new bonds are issued at a lower rate of interest.

It would seem that the statute upon its face clearly and unequivocally authorizes the issue of refunding bonds. County bonds may be issued for the purpose of paying, redeeming, funding or refunding "*any indebtedness*" of the county. The funding bonds constitute an indebtedness of the county, and are clearly included within the term "any indebtedness."

The language of the section above quoted does not confine the county to a single issue of bonds, but evinces an intention by the use of the word "refunding," in addition to the word "funding," and in connection therewith, to authorize the payment or redemption of existing bonds previously issued under that or other legislative authority by the issuance of other or refunding bonds when the same can be done at a lower rate of interest and to the profit and benefit of the county.

In 1883, the Legislature of Nebraska passed an act to authorize the issuance of bonds to refund bonded indebtedness. The first section of that act provided : "That any county of this State is hereby authorized to issue its coupon bonds at a rate of interest not exceeding six per cent per annum, for the purpose of refunding its bonded indebtedness, said bonds to be substituted in place of and exchanged for bonds heretofore issued, whenever such county can effect such substitution and exchange, which substituted bonds shall equal the amount due for principal and interest of such bonded indebtedness, with interest payable semi-annually, and the principal payable not ex-

ceeding twenty years from their date.'' By another section it was provided that if an exchange could not be effected, the refunding bonds might be sold to create a fund for the redemption of the outstanding bonds. After the passage of that act, and in 1884, Seward County issued its refunding bonds in accordance with the said statute for the purpose of refunding its bonded indebtedness. In 1891, it proposed to issue new refunding bonds in exchange for those issued in 1884; the authority therefor being the same act of 1883, under which the refunding bonds of 1884 were issued. The State auditor having refused to register the new bonds, an application for mandamus was made to the supreme court to compel their registration. While it does not appear that the precise objection urged against the bonds in this case was presented to the Nebraska court, nevertheless, it was held that the act of 1883 authorized the issuance of the new refunding bonds, and a peremptory writ of mandamus was issued as prayed for. State *ex rel.* Co. of Seward v. Benton, 33 Neb., 823.

The provision in a subsequent section of the act of 1888, now Section 1213, Rev. Stat., requiring the annual levy of tax to pay the interest on all bonds disposed of in pursuance of the act, and a further tax in time to provide means to pay the bonds as they come due, does not, in our judgment, in any way modify or restrict the general and comprehensive authority conferred by Section 1209. To hold that a provision for payment by the levy of taxes shows that it was contemplated that there should not be any bonds issued to refund other bonds previously issued would be to give the statute a very narrow construction. In the Nebraska case, *supra,* it was said that the act was a remedial statute, and the ordinary rules of construction as applied to such statutes were applicable to it.

The various provisions of the statute should be harmonized to effectuate its object. If the bonds as they become due are not redeemed by the disposal or exchange of refunding bonds, the law required that means be provided

for their redemption by taxation. But when the time of ultimate payment of the debt is postponed, by the issue of refunding bonds pursuant to the statute, the provision for the tax then applies to the new bonds. Taking the two provisions together, the effect is that existing bonds may be redeemed by the issuance of refunding bonds, or a tax shall be levied to provide means for their payment.

The case of City of Poughkeepsie v. Quintard, 136 N. Y., 275, is somewhat in point. The court there said, "Nor do we encounter difficulty in the provisions of the charter, which point out the mode of payment and provide for the payment itself of a matured debt. They operate only when ultimate payment is required, and have no application when, by the extension of the debt, its payment is postponed in fact. What may seem payment in form is not so in truth, but a mode of substituting extended bonds for those matured, taking the form of payment solely to compel the substitution intended. I think substance would be sacrificed to form, the intention of one statute be defeated and of the other perverted, if we should construe them as hostile and inconsistent."

Whatever may have been the effect of the provisions of Section 7, of the act of 1888, they did not, in our opinion, operate, nor[were they intended to operate as a restriction upon the refunding of a valid debt, previously funded under the authority of Section 1, of that act. But Section 7 was expressly repealed in 1893. Laws 1893, Ch. 33, Sec. 3. Sections 1 and 2 of the act of 1893 are incorporated in the revision as Sections 1216 and 1217, respectively. It is clear that the latter act is not inconsistent with the provisions of law authorizing the refunding of a valid debt incurred prior thereto. By the refunding, a new debt is not created. Its practical effect is the postponement of the time of payment of an old indebtedness.

For the above reasons, our answer to the reserved questions is in the affirmative.

Corn, J., and Knight, J., concur.