[No. 28248. *En Banc.* March 5, 1942.]

*In the Matter of the Sterilization of*
HOLLIS HENDRICKSON.[1]

[1]Reported in 123 P. (2d) 322.

*Thor C. Tollefson* and *Hugo Metzler, Jr.,* for appellant.

*Marshall McCormick,* for respondent.

*The Attorney General* and *W. A. Toner, Assistant, amici curiae.*

DRIVER, J.—This appeal involves the constitutionality of chapter 53, Laws of 1921, p. 162 (Rem. Rev. Stat., § 6957 [P. C. § 5398-1] *et seq.*), an act providing for the sterilization of certain mentally deficient and morally degenerate persons and of habitual criminals. The pertinent portions of the statute are as follows:

"SECTION 1. It shall be and is hereby declared the duty of the superintendents of all state institutions having the care of individuals held in restraint to report quarterly to the institutional Board of Health, all feeble minded, insane, epileptic, habitual criminals, moral degenerates and sexual perverts, who are persons potential to producing offspring who, because of inheritance of inferior or anti-social traits, would probably become a social menace or wards of the State.

"SEC. 2. It shall be the duty of the Institutional Board of Health to examine into the innate traits, the mental and physical conditions, the personal records, and the family traits and histories of all persons so reported . . . and if in the judgment of a majority of the said Board procreation by any such person would produce children with an inherited tendency to feeble mindedness, insanity, epilepsy, criminality or degeneracy, and there is no probability that the condition of such person so examined will improve to such an extent as to render procreation by any such person advisable, or if the physical or mental condition of any such person will be substantially improved thereby, then it shall be the duty of said Board to make an order directing the superintendent of the institution in which such inmate is confined to perform or cause to be performed upon such inmate such a type of sterilization as may be deemed best by said board.

"SEC. 3. The purpose of said investigation, findings and orders of said board shall be for the betterment of the physical, mental, neural, or psychic condition of the inmate, or to protect society from the menace of procreation by said inmate, and not in any manner as a punitive measure; and no person shall be emasculated under the authority of this act except that such operation shall be found to be necessary to improve the physical, mental, neural or psychic condition of the inmate.

"SEC. 4. After fully inquiring into the condition of each of such inmates said board shall make separate written findings for each of the inmates whose condition has been examined into, and the same shall be preserved in the records of said board, and a copy thereof shall be furnished to the superintendent of the institution in which the inmate is confined, and if an operation is deemed necessary by said board, then a copy of the order of said board shall forthwith be served on said inmate, or in the case of an insane person, upon his legal guardian, and if such insane person have no legal guardian then upon his nearest known kin within the State of Washington, and if such insane person have no known kin within the State of Washington, then upon the custodial guardian of such insane person."

Other sections of the act provide that any inmate or, in the case of a person under guardianship or disability, the guardian of the inmate may appeal from the order of the board to the superior court within fifteen days after receipt of notice of the board's decision by filing an informal notice of appeal with the secretary of the board; that, upon an appeal being taken, a transcript of the proceedings, findings, and order of the board shall be transmitted to the superior court, where a trial *de novo* shall be had as provided by statute for the trial of actions at law, and, if the inmate is financially unable to employ an attorney, the court shall then appoint one to represent him; and that, if no appeal is taken from an order of the board, or the board's decision is sustained on appeal by the court or jury, it shall be the duty of the superintendent of the institution in which the inmate is held to effect the sterilization by performing, or causing to be performed, the surgical operation specified in the order.

On January 24, 1940, the superintendent of the Western State Hospital for the insane, pursuant to the provisions of the foregoing statute, reported to the institutional board of health that Hollis Hendrickson, an in-

sane inmate of the hospital, was a fit subject for sterilization. The board, after conducting an examination, found that procreation by the inmate would be likely to produce children having an inherited tendency to insanity, and ordered that he be sterilized by vasectomy. A copy of the order was served upon the inmate's father as the next of kin. The father's letter of protest was treated as a notice of appeal, and a transcript of the board's proceedings was filed in the superior court for Pierce county. An attorney appointed by the court to represent the inmate moved to quash the proceedings, one of the grounds being the unconstitutionality of the sterilization act. The court granted the motion and entered its order permanently enjoining the hospital superintendent from carrying out the sterilization order of the institutional board of health. The prosecuting attorney of Pierce county, acting as attorney for the board, has appealed.

The principal question presented is whether or not the cited sterilization statute contravenes the due process clause of the fourteenth amendment to the constitution of the United States, which forbids any state to "deprive any person of life, liberty, or property, without due process of law, . . ." and the practically identical provision of the state constitution, Art. I, § 3.

Since the United States supreme court, in 1927, decided the case of *Buck v. Bell*, 274 U. S. 200, 71 L. Ed. 1000, 47 S. Ct. 584, it has been considered well settled that, so far as its substantive features are concerned, a sterilization statute such as we have here is within the police power of a state; hence its undoubted interference with personal liberty is not subject to constitutional proscription. Respondent's counsel freely admits as much and his attack is directed against only the procedural aspect of the statute. In effect, he grants that the legislature, in the interest of the public safety,

morals, health, and welfare, had the power to authorize the sterilization of defectives within the enumerated categories, but he urges that it failed to provide the procedural machinery necessary to make the statute constitutionally operative. Counsel also concedes that, as a general rule, a law which provides that the decision of an administrative board shall be subject to appeal to the courts, where a full *de novo* hearing is afforded, satisfies the requirements of due process. He contends that the law here involved fails to make provision for notice and an opportunity to be heard in the courts, such as the due process clause requires.

The statute makes no provision for notice to an inmate of the hearing before the institutional board of health, nor does it afford him any opportunity to appear and present his defense at such hearing. If he is to have his day in court, then it must be by virtue of the provision for appeal to the superior court from the order of sterilization. Examination of § 4, p. 164 (Rem. Rev. Stat., § 6961 [P. C. § 5398-5]), of the act discloses that the board's order shall be served in a different manner in each of four situations, as follows:

First, if the inmate is a criminal or feeble-minded person (more accurately, anyone within the statute not insane), the order of the board shall be served on the inmate. (There is no provision for service on a guardian or next of kin.) Second, in case of an insane person having a legal guardian, service shall be made on such guardian. Third, if an insane person has no legal guardian, then the order shall be served on his nearest known kin within the state (this was the situation of the inmate in the instant case). Fourth, if an insane person has no legal guardian and no known kin within the state, the order shall be served on the custodial guardian of the inmate. Respondent's attorney particu-

larly assails the provisions for notice in the first and fourth of these situations.

■ The essential elements of the constitutional guaranty of due process, in its procedural aspect, are notice and an opportunity to be heard or defend before a competent tribunal in an orderly proceeding adapted to the nature of the case. 16 C. J. S. 1153, § 569 c (2); 12 Am. Jur. 267, § 573. A sterilization law which does not fairly and adequately afford the defective subject notice and assure him his day in court violates this guaranty. *Davis v. Berry,* 216 Fed. 413; *Williams v. Smith,* 190 Ind. 526, 131 N. E. 2; *Brewer v. Valk,* 204 N. C. 186, 167 S. E. 638, 87 A. L. R. 237; and, to the same effect, see an advisory opinion of the supreme court of Alabama, *In re Opinion of the Justices,* 230 Ala. 543, 162 So. 123, in which it was said, p. 547:

"We think that the sterilization of a person is such an injury to the person as is contemplated by the quoted provision—just as much so as to deprive him of any other faculty, sense, or limb—and that due process of law means that this cannot be done without a hearing on notice before a duly constituted tribunal or board, and, if this is not a court, then with the untrammeled right of appeal to a court for a judicial review from the finding of the board or commission adjudging him a fit subject for sterilization."

■ As stated, the statute under consideration makes no provision at all for notice or hearing prior to the decision of the institutional board of health. That decision becomes final, and the prescribed surgical operation is performed unless an appeal is taken to the superior court within fifteen days after service of the board's order of sterilization. The only notice the statute requires in the case of a feeble-minded inmate is the service of the order on such inmate. There is no provision for the appointment of a guardian. Thus, the entire burden and responsibility of initiating the appeal

is placed upon a person held in confinement because of mental incompetency. Very likely, he could not read the order served upon him, or, if he could, he would be incapable of comprehending its purport. Clearly, such a provision does not meet the requirements of due process.

Nor do we think the provision that notice to an insane person who has no guardian or known kin within the state shall be given by service upon his custodial guardian, is legally sufficient. The custodial guardian would be the superintendent of the hospital for the insane in which the inmate is held, the identical official who started the proceedings by recommending to the institutional board that the inmate be sterilized; and, under the statute, the superintendent would be charged with the duty of carrying out the board's order should sterilization be decreed. Moreover, the head physician of each of the state hospitals is a member of the institutional board.

Let us imagine the case of insane inmate A, who has no guardian nor kin within the state. The superintendent of the hospital in which he is confined, presumably after consulting the head physician of the institution, determines that A is a fit subject for sterilization and so reports to the institutional board of health. The board, with the head physician sitting as a member, adopts the superintendent's recommendation and enters an order directing the superintendent to perform, or cause to be performed, a sterilization operation upon A. A copy of the order is served on the superintendent as A's custodial guardian and constitutes the only notice which A receives. Unless, within fifteen days, the superintendent, on A's behalf, takes an appeal to the superior court, the sterilization order must be carried out. Such a situation is contrary to the spirit of our laws and institutions. It is beyond the capacity of hu-

man nature for one individual to act fairly, in practical effect, as jailer, prosecutor, judge, and executioner and, at the same time, as guardian or next friend of the insane accused. The statute places a superintendent in an impossible position, however fair minded and conscientious he may be. As a practical matter, it does not afford the inmate the kind of notice and opportunity to appear and defend guaranteed by the due process clause.

Appellant contends that the respondent cannot question the constitutionality of the notice provisions which we have just discussed, because they do not directly affect him in this case.

The general rule announced by literally scores of cases is that a person cannot attack as unconstitutional a statute or provision of a statute not applicable to his particular situation. Washington cases are *State ex rel. Oregon R. & Nav. Co. v. Railroad Commission*, 52 Wash. 17, 100 Pac. 179; *State ex rel. Lindsey v. Derbyshire*, 79 Wash. 227, 140 Pac. 540; *State v. Bowen & Co.*, 86 Wash. 23, 149 Pac. 330, Ann. Cas. 1917B, 625; *Ajax v. Gregory*, 177 Wash. 465, 32 P. (2d) 560; *State ex rel. Campbell v. Case*, 182 Wash. 334, 344, 47 P. (2d) 24. However, the rule is subject to an exception which is stated by Rottschaefer on Constitutional Law, at p. 29, as follows:

"The general rule that denies a person the right to question the constitutionality of an act in respect of its enforcement against others is inapplicable in some situations. The unconstitutionality of a part of a statute sometimes renders the remainder thereof legally inoperative. The persons affected by the remainder are permitted to question the constitutionality of the invalid part even though it does not apply to them, since that is an essential element in establishing that the remainder is legally inoperative as to them."

█ A portion of a statute will render the whole of it invalid and the exception will be applied, where the unconstitutional portion is inseparable from the remainder. *State v. Bengsch,* 170 Mo. 81, 70 S. W. 710; *State v. Louisiana Coca-Cola Bottling Co.,* 169 La. 167, 124 So. 769; *Smith v. Thompson,* 219 Iowa 888, 258 N. W. 190; *McFarland v. Cheyenne,* 48 Wyo. 86, 42 P. (2d) 413; *State ex rel. Taylor v. Hall,* 129 Neb. 669, 262 N. W. 835; *People ex rel. Barrett v. Union Bank & Trust Co.,* 362 Ill. 164, 199 N. E. 272, 104 A. L. R. 1090.

The all-important, ultimate test is the intention of the legislature. Would the legislature have passed the act with the objectionable portions eliminated? It should be noted that the statute under consideration contains no saving clause or legislative declaration that, if a part is declared unconstitutional, the remaining portion shall not be affected thereby. We must endeavor to discover the legislative intent without the aid of any such express declaration.

This court has often stated the rule to be that the entire statute will fall where the constitutional and unconstitutional provisions are so connected and interdependent in subject matter, meaning, and purpose that it cannot be believed that the legislature would have passed the one without the other, or where the portion eliminated is so intimately connected with the rest of the statute as to make it useless to accomplish any of the purposes of the legislature. *Northern Cedar Co. v. French,* 131 Wash. 394, 230 Pac. 837; *State v. Nelson,* 146 Wash. 17, 261 Pac. 796; *Corwin Inv. Co. v. White,* 166 Wash. 195, 6 P. (2d) 607; *State ex rel. Pischue v. Olson,* 173 Wash. 60, 21 P. (2d) 516; *State ex rel. King County v. State Tax Commission,* 174 Wash. 336, 24 P. (2d) 1094.

█ Applying these principles to the instant case,

the invalidity of the provisions for notice under the first and fourth situations stated earlier in this opinion would eliminate from the operation of the sterilization act all feeble-minded inmates of state institutions and all insane inmates having no guardian or known kin within the state (it should be remembered that the statute applies *only to individuals held in restraint in state institutions*). Manifestly, the purpose of the statute is to protect society from the burden imposed upon it by permitting mentally defective, morally degenerate, and criminally inclined persons to reproduce their kinds—the legislature evidently acting upon the assumption that the undesirable characteristics of such persons are likely to be transmitted to their children.

To a layman in the fields of psychiatry and eugenics, the feeble minded, which, of course, includes imbeciles and idiots, would seem to be the most important class in any sterilization program. Institutionalized habitual criminals and the dangerously insane are, for the most part, kept under conditions of close and permanent confinement which preclude the possibility of procreation. Without attempting accuracy of definition from either a scientific or a legal standpoint, it may be said that, ordinarily, a feeble-minded person is a mental dwarf who has never had a completely normal mentality, while an insane person is one who once had a sound mind but lost it through injury or disease. Insanity may develop late in life, when the likelihood of reproduction is remote, but feeble mindedness exists from birth. A marked characteristic of the feeble minded is the hopelessness of cure. Often they are considered harmless and are released from institutional custody after sterilization. Can we say, then, that the object which the legislature obviously had in mind would be adequately accomplished if the feeble minded were excluded from the sterilization program, or that

the legislature would have passed the act without including that most important class of mental defectives?

In Smith v. Wayne Probate Judge, 231 Mich. 409, 204 N. W. 140, 40 A. L. R. 515, the supreme court of Michigan, in effect, concluded that the feeble minded are particularly and peculiarly fit subjects for sterilization. There, the court had before it a sterilization act which applied to feeble-minded persons only and did not include insane persons  One ground of attack on the law was that it made an unconstitutional classification by including the feeble minded and excluding all other defectives, thus denying to the former their right to the equal protection of the law.  The court upheld the constitutionality of the act upon the ground that the classification was not arbitrary or unreasonable, because there are "good and substantial reasons" for sterilization of the feeble minded which do not apply to the insane.

With reference to the provision of the statute for service on the custodial guardian, the record does not indicate the number or proportion of insane persons incarcerated in the state hospitals who have no guardian or known kin within the state, but we may assume that there are some.  If, then, those provisions of the sterilization act not directly applicable to respondent, and which his counsel attacks as unconstitutional, are stricken out of it, all of the feeble minded and a substantial number of the insane would be exempt from sterilization.

While the provisions in question and the inclusion of the kinds of defectives to which they pertain may not have been the sole inducement for the passage of the act, yet they are so connected with and related to the rest of it and so important to its general plan and operation as a whole as to impel the conclusion that

the legislature would not have passed the act without them.

In this connection, it should be noted that the interrelationship of the good and the bad features of the statute is such that, without the latter, the former would be open to attack on the ground that they make unreasonable, inequitable, and arbitrary classifications in contravention of the special privileges and immunities provision of Art. I, § 12, of the state constitution and the equal protection clause of the fourteenth amendment to the Federal constitution. For example, if the unconstitutional parts of the statute are stricken out of it, an insane inmate of one of the state hospitals who has, let us say, as his only relative, a father living in Vancouver might be subjected to a compulsory sterilization operation; but if the father changed his residence to Portland, Oregon, the same inmate would be exempt from such sterilization. How can it be said, then, that there is any sound basis, having a reasonable relation to the purpose of the sterilization law, for making a distinction between an insane inmate who has guardian or kinsfolk within the state and one who has not? See *State ex rel. Bacich v. Huse*, 187 Wash. 75, 59 P. (2d) 1101. It is our conclusion that the entire statute must fall.

Our attention has been directed to the provision in the sterilization act (§ 6, p. 165, Rem. Rev. Stat., § 6962 [P. C. § 5398-6]) that the attorney appointed by the court to represent the inmate "shall be compensated by the state upon order of the court." Under this provision, respondent's counsel is entitled to a reasonable attorney's fee, to be fixed by the trial court and paid by the state, for the services performed by him.

The order of the superior court granting the injunction is affirmed, and the cause is remanded, with di-

rection to fix and order payment of the fee of respondent's attorney, as the statute provides.

MAIN, MILLARD, BLAKE, SIMPSON, and JEFFERS, JJ., concur.

STEINERT, J. (concurring in part and dissenting in part)—I concur in that portion of the majority opinion which holds the statute unconstitutional to the extent that it provides for and permits personal service of notice upon feeble-minded inmates of state maintained institutions or for service upon custodial guardians of insane persons. As stated in the majority opinion, service of notice as provided by the statute would be futile as to the first of those classes of persons and of doubtful protection as to the second.

I disagree with the majority opinion, however, to the extent that it holds the statute unconstitutional with respect to personal service of notice upon habitual criminals, moral degenerates, and sexual perverts, or with respect to service upon the legal guardian or next of kin of an insane person. Service of notice in the manner provided as to each of these classes of persons affords full and adequate opportunity to take an appeal to the courts and to be heard therein. Nor do I think that the entire statute must be held unconstitutional merely because a portion of it is declared invalid.

It does not seem to me that the invalidated portions of the act are so inextricably connected with and related to the remainder of the act that it must perforce be held, as the majority states, "that the legislature would not have passed the act without them." If the legislature had foreseen the result of the majority opinion herein, it would no doubt have provided a more adequate form of service with reference to feeble-minded persons and insane persons under custodial guardianship. But it is inconceivable to me that the

same legislature would, in any event, have stubbornly refused to legislate with respect to habitual criminals, moral degenerates, sexual perverts, and insane persons having legal guardians, merely because still other classes were not included.

The majority opinion concedes that a sterilization statute, such as we have here, is within the police powers of the state, and that it was enacted in the interest of the public safety, morals, health, and welfare. To the extent that it may accomplish that purpose under the procedure provided for its enforcement, the statute should be upheld, and not stricken down entirely merely because it is in part ineffectual. To that extent I dissent from the majority opinion.

ROBINSON, C. J., and BEALS, J., concur with STEINERT, J.