LOCAL UNION NO. 415 OF the INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, Cheyenne, Wyoming, et al., Plaintiffs,

Clifford P. HANSEN, Individually and as Governor of the State of Wyoming, et al., Defendants.

No. 3350.

Supreme Court of Wyoming.

April 7, 1965.

Hickey, Rooney & Walton, Cheyenne, Sherman, Dunn & Sickles, Washington, D. C., for plaintiffs.

John F. Raper, Atty. Gen., Dean W. Borthwick, Deputy Atty. Gen., Cheyenne, John L. Kilcullen, of McNutt, Dudley & Easterwood, Washington, D. C., for defendants.

Before PARKER, C. J., and HARNSBERGER, GRAY and McINTYRE, JJ.

Mr. Justice GRAY delivered the opinion of the court.

This matter is before us on reserved constitutional questions pursuant to the procedure contemplated by §§ 1–191—1–

193, W.S.1957, and Rule 52(c), Wyoming Rules of Civil Procedure. It involves Ch. 39, S.L. of Wyoming, 1963, commonly known as the right-to-work law.

Plaintiffs[1] commenced an action below seeking a declaration that the law in question is unconstitutional on the sole ground that in certain respects the act is in conflict with and repugnant to the provisions of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. (1958), § 141 et sequitur. Plaintiffs also seek to enjoin defendants[2] from enforcing the act.

The portions of Ch. 39, supra, with which we are primarily concerned are as follows:

"AN ACT to provide that employment shall not be conditional upon membership or non-membership in, nor upon the payment or non-payment of money to, a labor organization, * * *

* * * * * *

"Section 2. No person is required to become or remain a member of any labor organization as a condition of employment or continuation of employment.

"Section 3. No person is required to abstain or refrain from membership in any labor organization as a condition of employment or continuation of employment.

"Section 4. No person is required to pay or refrain from paying any dues, fees, or other charges of any kind to any labor organization as a condition of employment or continuation of employment.

"Section 5. No person is required to have any connection with, or be recommended or approved by, or be cleared through, any labor organization as a condition of employment or continuation of employment."

Other sections provide civil and criminal penalties for violations.

From the pleadings and the admissions made at the pretrial conference certain facts that we regard as important and necessary to disposition of the controversy were agreed upon. For example, it is established that the unions are labor organizations as defined in § 1(a), Ch. 39, S.L. of Wyoming, 1963, and as defined in § 152(5), 29 U.S.C. (1958). Also, that the employers are subject to the provisions of Ch. 39, and are engaged in an industry affecting commerce as defined in § 142(1), 29 U.S.C. (1958). For many years the unions were and are now the collective bargaining representatives of the employees of plaintiff employers and were so recognized by the employers in keeping with the provisions of § 158(a) (5) and § 158(d), 29 U.S.C. (1958). During this time the unions and the employers entered into many collective bargaining agreements establishing wages, hours of employment, and working conditions; and several such agreements were in effect at the time Ch. 39 was enacted. It is also shown that the unions and the employers were desirous of continuing the relationship, but being fearful that in so doing each might be subjected to the rather severe penalties imposed by Ch. 39 the within action was commenced for the purposes above stated.

By the foregoing we do not want to leave the impression that the action was entirely devoid of factual dispute. Among other things, the agreements provided that the unions would act as exclusive referral agencies for employment with the employers, an arrangement now commonly known as an exclusive "hiring hall." In the trial court defendants vigorously assailed the provisions relating to such matter, asserting, as they do here, that the provisions were discriminatory upon their face.

1. Three labor organizations, hereinafter called "unions," and two employer representative associations, hereinafter called the "employers," joined as plaintiffs in the action.

2. The governor, the attorney general, and the prosecuting attorneys of the several counties of the state directly charged with enforcement are named as parties defendants.

Furthermore, that the provisions were administered by the unions in such a fashion as to discriminate against nonunion applicants and, upon a ruling of the trial court that these contentions were immaterial, made offers of proof to sustain their position. With respect to this phase of the case much more could be set forth. However, inasmuch as the trial court has ruled that the matter of discrimination is not an issue in the case necessary for decision and we have concluded that the controlling constitutional questions can be answered without regard to the contentions, it would seem that further elaboration of the point would serve no useful purpose.

Following pretrial the court entered an order for the purpose of reserving the questions submitted and, among other things, therein stated that no dispute exists as to any of the material facts in the case. As a conclusion of law the court further stated that if Ch. 39 is constitutional then it is necessary for the court to declare that the contracts mentioned are void. On the other hand, if Ch. 39 is declared to be unconstitutional then plaintiffs are entitled to restrain defendants from commencing or prosecuting any criminal actions against the plaintiffs for continuing to observe the terms of the said agreements. The court also concluded that the constitutional questions presented were important and difficult and on its own motion ordered the questions reserved for decision by this court.

The questions so ordered were as follows:

"a. Is Chapter 39 of the Session Laws of Wyoming of 1963 unconstitutional in that it prevents plaintiff labor organizations, as representatives of the majority of employees of plaintiff employers, from serving as exclusive bargaining agent for all of said employees, and in that it prevents plaintiffs from so contracting?

"b. Is Section 5 of Chapter 39 of the Session Laws of Wyoming of 1963 unconstitutional in that it prevents plaintiffs from using a non-discriminatory, exclusive referral system admin-istered by plaintiff labor organizations whereby plaintiff labor organizations refer employees to plaintiff employers and in that it prevents plaintiffs from so contracting?

"c. If Section 5 of Chapter 39 of the Session Laws of Wyoming of 1963 is unconstitutional, is the entire Act unconstitutional?

Before proceeding further, we must confess that we have been somewhat bothered with the wording of the questions. It is difficult to determine just what the questions encompass and whether the questions are so stated as to be susceptible of categorical answers. In fact, it is rather forcefully argued by defendants that we are not free to answer the questions because unauthorized assumptions and conclusions on the record made form the basis for the questions propounded. We are reminded of cases in which we declined to reach a decision because of apparent deficiencies in the record before us. White v. Board of County Commissioners of Albany County, 77 Wyo. 246, 313 P.2d 484; State ex rel. Keefe v. Jones, 62 Wyo. 61, 161 P.2d 135. Certainly we are cognizant of the pronouncements made in those cases and the reasons underlying the decisions. And we are also inclined to agree with defendants' contentions that the questions are not stated with the clarity and preciseness desired. Nevertheless, we are not inclined to agree that what we have said previously sustains the defendants' premise that the record here is such that we are without jurisdiction. We purposefully set forth above the facts established as the result of the pretrial conference. Those facts were as binding upon the trial court as they are here and, as we view it, sufficiently disposed of the necessary and controlling factual questions. Rule 52(c), W.R.C.P.

When we add to those facts the conclusion of the trial court that those facts made necessary a decision on constitutional questions and a statement by the court of what it perceived those questions to be, there is present all of the essentials necessary to

support the order reserving the questions. True, we may not be able to answer the questions as propounded, but that is not fatal. This court is free within the four corners of the record to restate the questions deemed to have been raised in order to achieve a proper and beneficial result. Board of Com'rs of Carbon County v. Rollins, 9 Wyo. 281, 62 P. 351, 352. Under the circumstances, we are persuaded that we should follow that course. The matter is of great public interest throughout the state. Decision thereon unfortunately has been delayed and we think we ought not, if it can be prevented, cause further delay by remanding the case without answers to constitutional questions that seem clearly to control disposition of the case. In thus proceeding we do no injustice to either party inasmuch as the essential underlying facts have been agreed upon.

Consequently we shall proceed to restate the questions. Before doing so, however, it is well to point out that the focal point of this controversy centers around § 5 of Ch. 39. It is not argued by plaintiffs that the legislature was without power to determine local policy with respect to "the execution or application of agreements requiring membership in a labor organization as a condition of employment." Section 14 (b), Labor Management Relations Act (1947), § 164(b), 29 U.S.C. (1958). That is understandable in view of the several holdings of state courts and the United States Supreme Court recognizing the right. Retail Clerks Intl. Assoc., Local 1625, AFL-CIO v. Schermerhorn, 375 U.S. 96, 84 S.Ct. 219, 11 L.Ed.2d 179; Annotation 92 A.L.R.2d 598. The real contention of plaintiffs is that § 5 set forth above goes beyond those limits and is in direct contravention of the provisions of § 9(a) of the Labor Management Relations Act (1947), § 159(a), 29 U.S.C. (1958). The contention poses difficult and important questions for the reason that so far as we can find no court has been confronted with a case containing provisions similar to § 5 set forth above. Under those circumstances

it appears proper specifically to limit the questions to the basic questions presented, and we perceive those to be as follows:

1. Is § 5 of Ch. 39, S.L. of Wyoming, 1963, in contravention of Art. VI of the Constitution of the United States?

2. If question number one is answered in the affirmative, is Ch. 39, S.L. of Wyoming, 1963, unconstitutional in its entirety?

Directing our attention to question number one it is first necessary to refer to certain constitutional provisions and valid laws of the United States.

Section 8 of Art. I, U.S.Const., provides at clause 3, "The Congress shall have Power * * * To regulate Commerce * * * among the several States * *." Art. VI, at clause 2, provides, "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof * * * shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." It follows that insofar as activities of an employer and employees affect interstate commerce they are subject to the federal law. Defendants' counsel concede this, citing Hill v. State of Florida ex rel. Watson, 325 U.S. 538, 65 S.Ct. 1373, 89 L.Ed. 1782, rehearing denied 326 U.S. 804, 66 S.Ct. 11, 90 L.Ed. 489; Buckman v. United Mine Workers of America, 80 Wyo. 216, 342 P.2d 236.

Section 9(a) of the Labor Management Relations Act (1947), § 159(a), 29 U.S.C. (1958), states:

"Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment * * *."

Defendants' counsel also agree and admit that under the foregoing provisions of § 9(a) plaintiff employers are obligated to recognize a properly designated majority union as the *bargaining representative for all employees,* union members as well as nonunion, in the bargaining unit. McQuay-Norris Mfg. Co. v. National Labor Relations Board, 7 Cir., 116 F.2d 748, 751, modified 7 Cir., 119 F.2d 1009, certiorari denied 313 U.S. 565, 61 S.Ct. 843, 85 L.Ed. 1524; Bethlehem Shipbuilding Corporation Limited v. National Labor Relations Board, 1 Cir., 114 F.2d 930, 941, certiorari dismissed 312 U.S. 710, 61 S.Ct. 448, 85 L.Ed. 1141.

Thus, we need only to inquire whether or not § 5 is in conflict with the above provisions of § 9(a). In order more precisely to point up our problem we turn to the language of § 5 which, among other things, says that no person is required to have "any connection with" a labor organization in his employment. Such a phrase is usually given a broad interpretation. Kokusai Kisen Kabushiki Kaisha v. Columbia Stevedoring Co., D.C.N.Y., 23 F.Supp. 403, 405, 406, affirmed 2 Cir., 100 F.2d 1016. It can mean a relationship that is either proximate or remote. S. P. Dunham & Co. v. 26 East State Street Realty Co., 134 N.J.Eq. 237, 35 A.2d 40, 45. As used here we observe that it sets aside, as a class, persons who are not members of a union, and undertakes complete divorcement of members of that class from *any relationship with a union.* We say this because the phrase clearly goes beyond the conditions imposed by §§ 2 and 4 of Ch. 39. Consequently we have no difficulty in concluding that the phrase was used, and intended to be used, in its broadest sense when applied to a "condition of employment or a continuation of employment." With that premise we relate it to the matter of collective bargaining.

When that is done we fail to see how a labor organization could possibly serve as bargaining agent or representative for all employees without a nonunion employee having a *connection* with such organization. In the first place the definition of agency itself includes a fiduciary *relationship* between a principal and his agent. The principal is the person whom the agent represents and from whom he derives his authority; the agent is one who acts for another by authority from him. See 2 C.J. S. Agency § 1, pp. 1023–1025, and 3 Am. Jur.2d, Agency, § 1, p. 419. Application of the principle to the field of labor management is succinctly described in Donnelly v. United Fruit Co., 40 N.J. 61, 190 A.2d 825, 832–833, as follows:

"A union selected as a bargaining agent by a majority of employees (in an appropriate unit) of an employer, in an industry affecting commerce, becomes the exclusive representative of all the employees in the unit for the purpose of collective bargaining with respect to wages, hours and conditions of employment. Labor Management Relations Act, § 9(a), 61 Stat. 143 (1947), 29 U.S.C.A. § 159(a). The exclusiveness of the agency exists whether the relations between the employer and union are conducted on an open, agency or union shop basis. The powerful role carries with it the responsibility of exercising the utmost good faith toward all employees represented, union and non-union, in negotiating a collective bargaining agreement with the employer, and in administering the agreement during its lifetime. The union-management compact becomes the code of the plant, and in policing it the union has the duty of treating all employees fairly, particularly with respect to employment of procedures established therein to adjust and settle their individual grievances."

Thus, it is apparent, in the light of the *relationship itself, that a labor union could* not act as bargaining agent for all employees without going to all employees (union and nonunion) for instructions and advice. Who else, except *all* employees, can tell the union what wages to demand; what working hours and general working

conditions are acceptable; and when the employees would rather strike than accept wages and working conditions which are offered them?

We visualize these things happening at mass meetings of *all* employees—where the principal (all employees) meets with the agent (the union) in order to settle questions of importance which have to be settled before negotiations can begin. Also, during that period of time while negotiations are under way, it is apparent that no progress could be made unless the negotiating agent could check back frequently with its principal.

Connections and relationships between the labor organization which negotiates and nonunion employees, in our opinion, cannot be avoided either during contract negotiations or grievance negotiations. The latter may be just as important as the first.

If a contract, negotiated for all employees by a labor union, is violated and a nonunion employee has a complaint, it would surely be the duty of the union as agent and negotiator to present the grievance. Here again, a connection between the union and the employee is unavoidable, if the union is to be the exclusive bargaining representative for all employees, as the federal law contemplates and allows.

State and federal courts have been consistent in holding that under § 9(a) of the Labor Management Relations Act (1947), § 159(a), 29 U.S.C. (1958), an individual employee has the right to maintain a direct action for damages where there is no arbitration clause barring such an action; and where arbitration is the exclusive remedy under the contract, to demand arbitration if the union is neglectful of his rights, Parker v. Borock, 5 N.Y.2d 156, 182 N.Y.S. 2d 577, 156 N.E.2d 297, 301. But before an individual employee can maintain a suit, he must show that he has exhausted his contractual remedies. Jenkins v. Wm. Schluderberg-T. J. Kurdle Co., 217 Md. 556, 144 A.2d 88, 91. Although we find no case where the employee trying to bring suit outside of union-grievance procedure was a non-member of the union, the Maryland case, at 144 A.2d 93, quotes Professor Cox's article, 8 Lab.L.J. 850 (1957), at p. 858:

> " * * * The bargaining representative would be guilty of a breach of duty if it refused to press a justifiable grievance either because of laziness, prejudice or unwillingness to expend money on behalf of employees who were not members of the union. Individual enforcement would then become appropriate. * * *"

Attention is also directed to Ostrofsky v. United Steelworkers of America, D.C.Md., 171 F.Supp. 782, 791, affirmed 4 Cir., 273 F.2d 614, certiorari denied 363 U.S. 849, 80 S.Ct. 1628, 4 L.Ed.2d 1732. From these cases we have clear holdings from both state and federal courts that § 9 of the Labor Management Relations Act (1947), § 159, 29 U.S.C. (1958), contractually binds all employees to an exclusive representative. When that exclusive representative is a labor organization, a nonunion employee is necessarily required to have a connection with a labor organization.

From what we have said it is quite apparent that § 5, Ch. 39, cannot stand as written. Neither do we think it can be saved simply by deleting therefrom the phrase which we have discussed. By clear and unequivocal language the section goes beyond mere implementation of §§ 2, 3, and 4 of the act. As stated above, the legislature demonstrated a clear intent and purpose by the section to set apart from the processes of collective bargaining, upon matters protected by the Labor Management Relations Act (1947), those employees who were not members of a union. That, of course, could not be done. Any such attempt is to impinge upon an area that is not open to the states under the provisions of § 14(b), Labor Management Relations Act (1947), § 164(b), 29 U.S.C. (1958). The very least that would be required to uphold the section would be a proviso similar to that contained in the law of the State of Florida, § 12, Declaration of Rights, Fla.Const., F.S.A., that the section

"shall not be construed to deny or abridge the right of employees by and through a labor organization or labor union to bargain collectively with their employer." See Schermerhorn v. Local 1625 of Retail Clerks International Association, AFL-CIO, Fla., 141 So.2d 269, 272, affirmed 375 U.S. 96, 84 S.Ct. 219, 11 L.Ed.2d 179. That would have to be done by the legislature, not by this court.

Consequently we have no alternative but to hold that § 5, Ch. 39, must yield to the supreme law of the land, which is the United States Constitution and the valid laws of the United States made in pursuance thereof. We advise that the answer to reserved question "a" as restated by question number one is "yes."

Because of that answer we find it unnecessary to undertake to answer question "b."

The answer to question "c" as restated by question number two presents the question of whether § 5 may be deleted from Ch. 39 without invalidating the act in its entirety.

While it is true that the act fails to contain a provision commonly called a "separability clause," that is of no great importance. Such a clause accomplishes little more than to direct special attention to applicable legal principles. Hanson v. Town of Greybull, 63 Wyo. 467, 183 P.2d 393, 399–400. In this jurisdiction we have consistently followed the rule that if the offending provisions of a statute are distinct and are not inseparably entangled with the remaining provisions of the act, and it also reasonably appears that the legislature would have passed the act without the offending provisions, the valid portions will be left to stand, provided the remainder is sufficiently complete to accomplish the purpose of the act. The paramount consideration is legislative intent. Addison v. Fleenor, 65 Wyo. 119, 196 P.2d 991, 993; Hanson v. Town of Greybull, supra, at 183 P.2d 399; State ex rel. Wyckoff v. Ross, 31 Wyo. 500, 228 P. 636, 639. Just recently we pointed out that

even with respect to penal provisions if a part of the penalty prescribed goes beyond the powers of the legislative body, such portion may be severed without declaring the remaining provisions invalid. City of Rawlins v. Frontier Refining Company, Wyo., 396 P.2d 740, 746.

With the foregoing in mind we examine the act to ascertain, if possible, the legislative intent. Turning first to the title set forth above, it will be noted that it clearly and specifically states the purposes intended to be accomplished. It provides in part that "employment shall not be conditional upon membership or non-membership in, nor upon the payment or non-payment of money to, a labor organization." Reference to §§ 2, 3, and 4 of the act readily discloses that the sections deal fully with the conditions of employment enumerated in the title and furthermore are in keeping with the provisions of § 14(b), Labor Management Relations Act (1947), § 164(b), 29 U.S.C. (1958), as interpreted by the United States Supreme Court. The efficacy of the sections to serve the stated public purpose of the act will in no way be jeopardized or diminished by deletion of § 5. Neither do we think that the deletion would be disruptive of the indicated legislative intent to establish for this state the "attitudes and philosophies on the subject" of labor relations, insofar as that might be done under § 14(b). Retail Clerks Intl. Assoc., Local 1625, AFL-CIO v. Schermerhorn, 375 U.S. 96, 84 S.Ct. 219, 223, 11 L.Ed.2d 179. The fact that in carrying out the intent the legislature flexed a bit of muscle does not make separability insurmountable or unwise. As we said in Hanson v. Town of Greybull, supra, at 183 P.2d 399:

"* * * where more is done than legally could be done, that portion of the statute for which there is authority can be held operative and valid and the law held void as to the residue. * * *"

We are disposed to believe that had the legislature's attention been called to the usurpation of power contained in § 5, it

would have removed it from the act and enacted the remainder.

Also, we would point out that the burden of establishing that the act was meant to be indivisible is upon the parties attacking the statute. Bell v. Gray, Wyo., 377 P.2d 924, 926; Steffey v. City of Casper, Wyo., 357 P.2d 456, 469, rehearing 358 P.2d 951. We find nothing in the record from which it can be said that plaintiffs have met the burden.

We therefore advise that the answer to reserved question "c" as restated by question number two is "no."

The cause will be remanded to the district court for such proceedings as may be advised.

Mr. Justice McINTYRE (concurring in part and dissenting in part).

I join with my colleagues Chief Justice Parker and Justice Gray in holding that § 5 of Ch. 39, S.L. of Wyoming 1963, is unconstitutional and void.

I cannot, however, agree that the act itself is so divisible that the void portion can be deleted without a destruction of the remaining portions of the act. In other words, my answer to the district court would be that § 5 is unconstitutional; and this being so, the entire act should be held to be unconstitutional.

The question as to whether portions of a statute which are constitutional shall be upheld while other divisible portions are eliminated as unconstitutional is primarily one of intention. Steffey v. City of Casper, Wyo., 357 P.2d 456, 469, rehearing granted and opinion modified 358 P.2d 951; 82 C.J.S. Statutes § 93, p. 154.

In the statute with which we are now dealing, there is no severability clause expressing an intention on the part of the legislature that constitutional portions of the act should stand if the statute is found to contain unconstitutional portions. Also, the act is a criminal statute, and we should keep in mind that, inasmuch as penal statutes are always construed strictly, courts incline toward treating a penal or criminal statute as void in its entirety whenever one section or clause is clearly unconstitutional. 16 Am.Jur.2d, Constitutional Law, § 196, p. 431; State ex rel. White v. Board of County Com'rs of Wyandotte County, Kan., 140 Kan. 744, 39 P.2d 286, 291.

This rule has been adopted in our state, and I see no reason for departing from it here. McFarland v. City of Cheyenne, 48 Wyo. 66, 42 P.2d 413, 419. In the McFarland case, as in this case, the act under consideration made it a crime for any person to violate any of the provisions of the act and fixed a heavy penalty therefor. There is, of course, no way of telling whether the punishment prescribed would have been the same if the legislature had known it could not prohibit those things forbidden in the unconstitutional portion of the statute.

The general rule applicable here is that an entire statute will fall where constitutional and unconstitutional provisions are so connected in subject matter, meaning and purpose that it cannot be believed the legislature would have passed one without the other. In re Hendrickson, 12 Wash.2d 600, 123 P.2d 322; State ex rel. Marshall v. Consumers Warehouse Market, Inc., 185 Kan. 363, 343 P.2d 234; Millett v. Frohmiller, 66 Ariz. 339, 188 P.2d 457.

The legislature in this instance has attempted to do two things. It has (1) attempted to prohibit the matter of membership in and payment of dues to a union as a condition of employment; and (2) it has attempted to prohibit all other connections with a union as a condition of employment.

This is like a statute defining the crime of obtaining property by false pretenses, which covers money or any valuable thing. The purpose of such a statute is generally to cover "any valuable thing." If those words were deleted from the statute, the purpose of the statute would be defeated. The legislative intent is not merely to prohibit the obtaining of money by false pretenses; it is to prohibit the obtaining of any valuable thing by false pretenses.

In the case at bar, the legislative intent was not merely to prohibit union membership as a condition of employment; it was to prohibit any connections with a union as a condition of employment. When § 5 is deleted, the purpose of the act is defeated.

In writing the opinion in McFarland v. City of Cheyenne, supra, at 42 P.2d 419, Justice Blume speaking for this court cited Butts v. Merchants' & Miners' Transportation Co., 230 U.S. 126, 33 S.Ct. 964, 965, 57 L.Ed. 1422, where Congress had passed a law intended to apply to all persons and all places within the jurisdiction of the United States. The assumption that the law could so apply was erroneous, and the court said for that reason the "purpose failed."

In my mind, Wyoming's right-to-work law was intended to cover the entire field of connections on the part of employees with labor organizations. If the assumption that it can so apply is erroneous, then the purpose fails. In the McFarland case, at 42 P.2d 419, Justice Blume followed the rule that in seeking the legislative intent, the presumption is against any mutilation of a statute; and if the legislative intent cannot be given effect, the particular law must fall.

The legislative intent here was to prohibit "any connection" with a labor organization as a condition of employment—not merely certain connections. This intent is destroyed when the over-all words of "any connection" are taken out. With the legislative intent thus mutilated and destroyed by declaring § 5 unconstitutional, and in the absence of a severability clause, the rest of the act should fall. See State ex rel. Donaldson v. Hines, 163 Kan. 300, 182 P.2d 865; and Ex parte Blaney, 30 Cal.2d 643, 184 P.2d 892.

### A Practical Consideration

With § 5 being held to be unconstitutional, there is good justification in equity for us to hold the rest of the act unconstitutional and void also. Such a holding would place in the hands of the legislature the question as to whether it would or would not reenact the remaining portion of the act without § 5.

The Thirty-seventh Legislature, which enacted the legislation originally, has been held by us and by a three-judge federal court not to have been properly apportioned according to constitutional requirements. See State ex rel. Whitehead v. Gage, Wyo., 377 P.2d 299, 301; and opinion in Schaefer v. Thomson, 240 F.Supp. 247.

If we declared all of Ch. 39 to be unconstitutional unless and until the legislature reenacts the remaining portion without § 5, it would afford an opportunity for a constitutionally apportioned legislature to pass upon the desirability of the law with § 5 deleted.

My answer to question "c" would be that the entire act (Ch. 39) is unconstitutional.

Mr. Justice HARNSBERGER:

My unwillingness to join the prevailing opinion in this case arises from my inability to find in the language used in § 5, Ch. 39, S.L. of Wyoming, 1963, the words upon which the majority bases its conclusion.

There is complete agreement on my part that collective bargaining by labor organizations, usually referred to as unions, is not only lawful but expressly authorized by applicable federal law and court decision. It is as firmly established that a properly designated or selected union becomes the exclusive bargaining agent for all employees of a work unit, and all employees thereof are bound by agreements reached by such union and management irrespective of whether the employee is or has been or ever shall become a member of the bargaining union. It is also conceded that such a union collective-bargaining agent may, by agreement, become and be constituted the exclusive employment referral agency or what is sometimes referred to as a "hiring hall," although some court decisions, both state and federal, leave this question open as depending upon whether or not the terms of the agreement are discriminatory. Local

357, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America v. National Labor Relations Board, 365 U.S. 667, 81 S.Ct. 835, 6 L.Ed.2d 11. It may not be inappropriate to note that in the instant case which gave rise to the submission of the constitutional questions, the issue as to whether the agreement was nondiscriminatory is important.

Where then, with so much of agreement between us, must our disharmony arise?

The court's opinion asserts § 5 says, "no person is required to have 'any connection with' a labor organization in his employment." I find in § 5 of the Act or in any other portion of the law no language which justifies that statement. Section 5 says, "No person is required to have any connection with, or be recommended or approved by, or be cleared through, any labor organization *as a condition of employment or continuation of employment.*" (Emphasis supplied.) The court's revised and altered statement would possibly inhibit the relationship between the union and a non-union employee which results in the non-union employee being required, bound and governed by the terms and conditions of a collective-bargaining agreement between union and management. But the actual unrephrased and unaltered section does not. It merely prohibits requiring that persons be connected with or recommended or approved by or be cleared through a labor organization *as a condition of employment or continuation of employment.*

It seems obvious that a person who has not yet become an employee cannot, under any existing law, be in any manner bound by a bargaining agreement between any union and any employer. In consequence the status of an applicant for employment has no connection with or relation to any agreement that may exist between a union and the prospective employer. Section 5 only affects and deals with the condition and status of the applicant for employment at the time employment is sought. Therefore, § 5 only prohibits requiring as a qualifying precedent condition for employment

that there be a connection or relationship with a labor organization. This is the plain, simple, certain, reasonable, and exclusive intendment, meaning, and purpose of the section. It bars making union membership a necessary qualification for employment. It does not exempt employees, whether union or nonunion, from being subjected to the terms of labor-management agreements in their employment.

The conclusions of the court that § 5 is unconstitutional but that the balance of the Act is constitutional presents more than a mere anomaly. It amounts to gross and irreconcilable inconsistency. Section 2 of the Act which the court finds constitutional says, "No person is required to *become or remain a member of any labor organization* as a condition of employment or continuation of employment." (Emphasis supplied.)

Now compare this with § 5: "No person is required to *have any connection with* * * * any labor organization as a condition of employment or continuation of employment." (Emphasis supplied.)

Thus the difference between the constitutional and unconstitutional is that prohibiting requirement of union membership is constitutional, but prohibiting connection with a union as a required precedent condition for employment is unconstitutional.

What a strange juggling of words, meanings, and interpretations is this?

Section 5 is unconstitutional because it prohibits requiring there be a "connection" or "relationship" between the union and an as-yet-non-employed person who could not, until employed, be subjected to union-management agreements, yet § 2 is constitutional even though it prohibits requiring as a condition of employment the "connection" or "relationship" necessarily arising from union membership.

The intention of the legislature in enacting Ch. 39, S.L. of Wyoming, 1963, is clearly expressed in the title of the Act, "that employment shall not be conditioned upon membership or non-membership in * * * a labor organization." By these words, it

clearly appears the legislature recognized the right of workers to organize and through and by their organization into unions to collectively bargain respecting all aspects of employment. It is just as clear that it was the legislative purpose to ensure that all workers, whether union or nonunion members, should have equal right of employment. The Act itself does not spell out in detail recognition ´ of the right of workers to so organize, to collectively bargain or that such bargaining would not only inure to the benefit of all employees irrespective of their union membership or that it might impose upon all employees, both union and nonunion, conditions and obligations assumed in their behalf and made obligatory upon them. But such specific action is unnecessary as it must be assumed the state legislature was aware of what was and is now the law of the land and that its acts would be within the purview of that law.

This court has repeatedly held that it is the judicial purpose and function to uphold legislative acts wherever and whenever that is possible and to give legislative expressions such meaning and interpretation as will, if possible, leave them valid and constitutional. The Constitutions of this State and of this Nation are not judicial swords to suspend over the heads of coordinate bodies. They are merely restrictive tenets to be applied when and only when it clearly and unmistakably appears within the body of legislative or executive acts that constitutional limitations have been violated. The words and phrases used in legislation should not be given strained or special meanings nor by inference, innuendo or paraphrase should they be added to or subtracted from. Even more, if by any fair or reasonable interpretation the legislative enactments may be so construed or interpreted as to leave them valid, that is a judicial must.

In this case, the court's opinion clashes violently with these precepts. Courts do not concern themselves with the wisdom of legislative action even though it may offend their own philosophies. If laws unacceptable to the people are enacted, the public, which holds the final say, will in due season repudiate them. The courts, however, may not.

Finally, while my views and disagreement with the majority cannot restore § 5 of the questioned Act to validity, it may be that by upholding the balance of the Act the legislative purpose to erase discrimination among those who seek a livelihood through being given equal rights to employment may be accomplished in part.

The right of every person to earn a living is a paramount right, and that right will be preserved in time no matter how current legislation or court decision may regulate or impair the enjoyment of that right. In this country the will of the majority is accepted as controlling. So it is that when employees of a work unit, by their majority vote, have designated a union as their bargaining representative, that decision is binding upon all employees whether union or nonunion, and they must abide by that decision. But even the largest majority may not punish and discipline those who do not see fit to agree with and join with the majority by denying them an equal right to be employed and earn a living. Congress has recognized this by the enactment of § 14 (b) of the National Labor Management Relations Act, 61 Stat. 151 (1947), 29 U.S.C.A. § 164(b) (1952), and Ch. 39, S.L. of Wyoming, 1963, has implemented the protection of that right. The fact that all who labor within a work unit become subject to agreements made between the bargaining union selected by the employee-majority and the employer does not justify or authorize discrimination of opportunity to become employed against those who want to work but who fail or refuse to become members of a labor organization. Therefore it is difficult to understand a decision which strikes down a section which only requires that opportunity for employment must not be conditioned upon such membership in or association or connection with the union selected by a majority of employees as a

bargaining agent for the entire employee personnel.

The most careful reading of § 5 will not discover one word, one phrase, one sentence, or any expression, taken either in or out of context, which denies the right of collective bargaining; which denies a labor organization the right to become an exclusive employment referral agency; or which denies either union or nonunion employees the benefits or exempts them from the obligations of a union-management collective-bargaining agreement between the lawfully designated employee-bargaining agent and management. The only prohibition contained in § 5 is levied against imposing as a precedent condition to becoming employed that the applicant be a union member. This does not run counter to either State or Federal Constitution nor does it in the least offend against any state or federal law or court decision. The Act as a whole is constitutional. Accordingly, I would answer both questions "a" and "c" in the negative.