GRAPHICS COMMUNICATIONS
INTERNATIONAL UNION,
LOCAL 121–C, Plaintiff,

v.

SOUTHERN COUPON, INC., American
Coupon and Ticket Co., Inc.,
Defendants.

No. CV:92–PT–2262–S.

United States District Court,
N.D. Alabama,
Southern Division.

April 21, 1993.

George C. Longshore, Longshore Naka-mura & Quinn, Birmingham, AL.

C.V. Stelzenmuller, Burr & Forman, Birmingham, AL.

Onnie D. Dickerson III, Birmingham, AL.

## MEMORANDUM OPINION

PROPST, District Judge.

This cause comes to be heard on plaintiff's, Graphic Communications International Union, Local 121–C, Motion for Summary Judgment. In a pretrial conference held on March 29, 1993, the parties agreed that this court could treat this case as before the court on cross-motions for summary judgment.

## FACTS

Plaintiff is a labor organization representing employees in the printing trade in the Birmingham, Alabama area. Defendant Southern Coupon, Inc. (Southern Coupon) is a printing company engaged in doing a highly specialized form of printing coupons and tickets.[1] Plaintiff and Southern Coupon entered into a collective bargaining agreement on October 3, 1989. This agreement contained an arbitration clause.[2]

On May 30, 1991, Southern Coupon discharged employee Robert Cather for using its materials and equipment for his own ben-

---

1. Defendant American Coupon and Ticket Company, Inc. (American Coupon) is the alleged alter ego and/or successor of Southern Coupon.

2. Article XXXI of the collective bargaining agreement provides for arbitration. This clause provides:

> 31.1 A Board of Arbitration shall be formed as follows: Within thirty (30) days after a question or difference between the parties to this Agreement shall have come to the point where it is ready for consideration by the Board of Arbitration each party to the contro-

versy shall appoint two representatives to serve on the Board. In the event these four arbiters are unable to agree upon the fifth arbiter within fifteen (15) calendar days the procedures of the American Arbitration Association shall be utilized to name the fifth arbiter. The expenses of the fifth arbiter shall be shared equally by the Printing Industry of Birmingham and the Union. The decisions of the fifth arbiter shall be final and binding to both parties to this Agreement.

efits. A grievance was filed and processed without resolution through the steps of the grievance procedure. Ultimately, Cather's grievance was submitted for final and binding resolution to arbitrator James O. Odom (arbitrator). On April 24, 1992, the arbitrator rendered his decision. The arbitrator's decision revoked Cather's discharge and ordered that he be returned to work as soon as practicable, with back pay.[3]

Following the award, Southern Coupon did not reinstate Cather. On September 25, 1992, Southern Coupon ceased doing business. Plaintiff brought this action seeking a declaration of its rights, equitable and injunctive relief ordering Southern Coupon (and now its alleged alter ego and/or successor American Coupon) to reinstate Cather and to comply with the remedial portions of the award. American Coupon ceased operations about March 1, 1993.

## CONTENTIONS OF THE PARTIES

Plaintiff contends that the arbitration award is due to be enforced. Plaintiff further argues that Southern Coupon waived its right to protest the award by failing to file an appeal within the ten-day time period set forth by *Airco, Inc. v. Local Union 1013–A,* 117 LRRM 3363 (N.D.Ala.1984).[4] Moreover, plaintiff asserts that American Coupon is the alter ego and/or successor to Southern Coupon. Plaintiff also claims that it should be awarded fees payable by both Southern Coupon and/or American Coupon.

Defendants contend that the arbitration award is unenforceable. Defendants also contend that the *Airco* ten-day time period does not apply. Defendants argue that, under Alabama law, if an arbitration is conducted without the requirements of Article 6, Title 6 of the Alabama Code, it is a common-law arbitration. One of these requirements is a written submission signed by the parties. Here, there was no written submission signed by the parties offered to the arbitra-

tor. Defendant American Coupon argues that it is not bound by the arbitration award because it is not the successor or alter ego of Southern Coupon.

## ANALYSIS

A summary judgment is appropriate only if this court finds that there exists no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A party seeking summary judgment bears the initial responsibility of informing this court of the basis for its motion, and identifying those portions of the pleading, depositions, answers to interrogatories, admissions on file, and any affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552. Once the moving party has met this burden, the nonmoving party "must produce evidence that shows there exists a genuine issue of material fact." *Cottle v. Storer Communication, Inc.,* 849 F.2d 570, 575 (11th Cir.1988). Rule 56(e) requires the nonmoving party to go beyond the pleadings and by affidavits, or by the depositions, answers to interrogatories, and admissions on file designate specific facts showing there exists a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. The court may consider the offered "pleadings, depositions, answers to interrogatories, and admissions of file, together with the affidavits, if any ..." in deciding whether to grant or deny a summary judgment motion. Fed.R.Civ.P. 56(c). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to the party's case, then an entry of summary judgment is appropriate. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53.

---

**3.** Defendants argue that, even if the award is enforceable, Cather would be entitled to recover from Southern Coupon only back pay from the date of his discharge to March 1, 1992, as he would have been laid off for lack of work at that time.

**4.** The *Airco* court applied Alabama state law in selecting the time period for a losing party to challenge a labor arbitration award.

## EMPLOYER'S FAILURE TO APPEAL ARBITRATION AWARD WITHIN 10 DAYS

█ This court is presented with a number of interrelated issues. The court must first address plaintiff's contention that Southern Coupon waived its right to protest the award by failing to file an appeal within the ten-day time period set forth by *Airco, Inc. v. Local Union 1013–A,* 117 LRRM 3363 (N.D.Ala.1984).

In *Airco, supra,* plaintiff Airco sued to set aside an arbitration award. The arbitration award at issue was rendered on September 23, 1983. Plaintiff filed its action on November 18, 1983, challenging the award.[5] The *Airco* court reasoned that for Section 301 arbitration actions, the 10 day statute of limitations set forth by Alabama Code § 6–6–15 controlled. Consequently, plaintiff Airco's action (on its face) was time-barred because it was filed 55 days after the arbitration award.

Here, defendants argue that *Airco* has no application because the arbitration at issue did not meet the requirements under Article 6, Title 6 of the Alabama Code since there was no submission in writing signed by the parties submitting the matter to arbitration. Defendants, in their brief to this court, presume that the arbitration in *Airco* met the requirements of statutory arbitration under the Alabama Code. The defendants acknowlege, however, that the *Airco* opinion is silent on that point.

The *Airco* court concluded that plaintiff Airco's action was time barred "on its face".

5. In *Airco,* plaintiff claimed that it satisfied the 10–day period because it filed suit within 10 days of receipt of the arbitrator's November 8, 1983, denial of rehearing. The *Airco* court stated that "[a] party may not wind back the limitations clock at any time by requesting rehearing." *Id.* at 3364.

6. *See also IBEW v. Anderson Construction Co.,* 907 F.2d 74 (8th Cir.1990); *Harry Hoffman Printing Co. v. GCIU,* 912 F.2d 608 (2nd Cir. 1990); *Office Employees v. Security Federal Credit Union,* 125 LRRM 2516, 1987 WL 17225 (E.D.Mich.1987). These cases illustrate courts adopting state periods of limitations for contesting arbitration awards.

7. Defendants' contend that the arbitration award at issue did not meet the statutory requirements

This gives the impression that the court did not inquire one way or the other on whether the arbitration met the statutory requirements set forth by the Alabama Code. The *Airco* court simply applied the 10 day statute of limitations set forth by the Alabama Code for appeals to arbitration awards. Here, the union and Southern Coupon entered into a collective bargaining agreement that provided for arbitration of all disputes arising under the collective bargaining agreement and an arbitrator rendered a decision. Southern Coupon did not appeal the arbitration award within 10 days. Therefore, the arbitration award is due to be enforced because Southern Coupon's appeal is time barred.[6]

## ENFORCEABILITY OF ARBITRATION AWARD

This court will now address defendants' argument that the arbitration award is unenforceable.[7] In *Sullivan, Long, & Hagerty, Inc. v. Local 559 Laborers' International Union,* 980 F.2d 1424, 1426 (11th Cir.1993), the Eleventh Circuit addressed the judicial review of a labor arbitration:

Federal judicial review of the contractual mediation of a labor dispute is extremely narrow. This is due in part to the strong federal policy favoring the private and efficient resolution of labor disputes, as emphasized by the Supreme Court in the "Steelworkers Trilogy" cases. Based upon this policy, arbitral awards enjoy a strong presumption of finality in the labor arena. Finality benefits both sides; the employee obtains quick and inexpensive resolution of

of an arbitration under the Alabama Code. Therefore, under Alabama common law, the unsuccessful party to an arbitration may await the successful party's bringing an action to enforce the award and may then present any objections to the award in defending the action to enforce. Plaintiffs argue that defendants cannot advance arguments before this court that were not raised at the arbitration. *See generally Jones Dairy Farm v. UFCW,* 760 F.2d 173, 175 (7th Cir.1985); *United Steelworkers v. Smoke–Craft, Inc.,* 652 F.2d 1356, 1360 (9th Cir.1981) (failure to raise question constituted waiver of issue); *Mogge v. District 8, I.A.M.,* 454 F.2d 510, 513 (7th Cir. 1971) (failure to raise defects before arbitrator waived right to do so in federal court).

his claim and the employer is able to defuse the situation and thereby minimize labor unrest. In addition, the arbitrator has greater leeway to rely on his expertise in labor matters—and his sense about the true intent of the parties of the agreement—to reach a result that might well be more equitable and efficacious than that of a judge applying traditional rules of contract interpretation. *Wallace v. Civil Aeronautics Bd.*, 755 F.2d 861, 864 (11th Cir.1985). Narrow judicial review is also dictated by the contractual nature of arbitration. Having bargained for the arbitrator's interpretation of the collective bargaining agreement, the dissatisfied party has only the most limited recourse in federal court. See *United Steelworkers v. Enterprise Wheel & Car. Corp.*, 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960).

.     .     .     .     .

The substantive review of a labor arbitration award "is limited to a determination of whether an award is irrational, whether it fails to draw its essence from the collective bargaining agreement or whether it exceeds the scope of the arbitrator's authority." *Butterkrust Bakeries v. Bakery, Confectionery and Tobacco Workers*, 726 F.2d 698, 699 (11th Cir.1984). In the instant case, the district court set aside the award on the ground that the Joint Committee ignored the plain language of the collective bargaining agreement. We review de novo a district court's order to vacate an arbitration award. *Robbins v. Day*, 954 F.2d 679, 681 (11th Cir.), cert. denied, —— U.S. ——, 113 S.Ct. 201, 121 L.Ed.2d 143 (1992).

.     .     .     .     .

In *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987), the Supreme Court clarified the scope of a federal court's authority to set aside an arbitration award on

the ground that the award fails to draw its essence from the collective bargaining agreement between the parties. Courts ... do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts ... The arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract ... [T]he arbitrator's award settling a dispute with respect to the interpretation or application of a labor agreement must draw its essence from the contract and cannot simply reflect the arbitrators's own notions of industrial justice. *But as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.* 484 U.S. at 38, 108 S.Ct. at 370–71.

*Id.* at 1426–1427. (emphasis supplied) (footnotes omitted).

Defendants claim that the arbitration award is unenforceable for a number of reasons. This court will address each contention.

## (A) ARBITRATOR APPLIED IMPROPER JUST CAUSE STANDARD.

■ Defendants argue that the arbitrator misapplied the collective bargaining agreement. The arbitrator stated the issue as "whether the grievant was discharged for just cause." The grievance complaint, however, did not refer to being discharged without just cause.[8] Defendants contend that the arbitrator applied a "just cause" standard of review rather then the standard set forth

---

**8.** The form of violation set forth in the grievance complaint stated being terminated for unauthorized use of company equipment, time, and materials for personal benefit as well as falsifying time sheets. Under the collective bargaining agreement, "the foreman has the right to employ help, and may discharge (a) for incompetency,

(b) for neglect of duty, (c) for violation of office rules which shall be conspicuously posted and shall in no way abridge the civil rights of employees." Article IV, 1989–1991 Agreement between Printing Industry of Birmingham and Graphic Communications Union Local 121C.

under Article IV of the collective bargaining agreement.

The arbitrator on page one of his opinion set forth the pertinent contractual provision for him to interpret and apply. Plaintiff's Exhibit B at pg. 1. Moreover, the arbitrator reviewed extensively the evidence of Cather's misconduct. *Id.* at pgs. 9–14.[9] The arbitrator concluded, however, that "the Company could not show, when, where, and by whom the work was produced ... though the circumstances which the Company looked at when it made the decision to discharge the grievant pointed to the conclusion that the grievant was deadheading (and for personal profit, as well), his showing of a printing capability at his home provided an explanation which was not effectively rebutted by the large quantity of physical evidence." *Id.* at pg. 14. The arbitrator reasoned that the evidence did not support the conclusion that Cather appropriated company time, materials and equipment for his personal benefit. Besides the fact that the arbitrator phrased the issue as discharge for "just cause", there is no indication in his decision that he substituted "just cause" for the standard set forth in Article IV, Section 4.2 of the collective bargaining agreement.

### (B) THE AWARD IS UNENFORCEABLE BECAUSE IT IS BASED ON A FINDING OF FACT WHICH IS UNTRUE.

Defendants argue that the arbitrator's conclusion that Cather's falsification of his time card was not proved is incorrect. Defendants contend that there was sworn testimony that Cather turned in a time card when he was not working. The arbitrator concluded that Cather's falsification of his time card was not proved. *Id.* at 14. This conclusion is not irrational.

9. Cather was accused of using company equipment, time, and materials for personal benefit. This practice is called "deadheading" in the printing industry.

10. The arbitrator discussed the various burdens of proof in deciding upon "clear and convincing"

### (C) THE ARBITRATOR ERRED IN FINDING AS A MATERIAL FACT THAT SOUTHERN COUPON HAD TAKEN THE POSITION AT EVERY STAGE THAT CATHER'S ACTIONS WERE CRIMINAL AND IN USING THIS FINDING AS A BASIS FOR IMPOSING AN IMPROPER BURDEN OF PROOF ON SOUTHERN COUPON OF "CLEAR AND CONVINCING" EVIDENCE.

The arbitrator concluded that "because the charge is essentially criminal in nature, what will be required of the Company is a quantum of proof that is clear and convincing." *Id.* at pg. 8.[10] In his decision, the arbitrator recited the company's position on Cather's discharge. In this position statement, the company referred to Cather's alleged conduct as "illegal conduct" *Id.* at pg. 2–4. It was not irrational for the arbitrator to require Southern Coupon to prove the reason for Cather's discharge by "clear and convincing" evidence.

### (D) ILLEGALITY OF THE UNDERLYING UNION CONTRACT VITIATES THE ARBITRATION AWARD.

Defendants contend that the collective bargaining unit contained an illegal "maintenance of membership" or "closed shop" clause. Under 29 U.S.C. §§ 158(a)(3) and (b)(2) these type of security agreements are illegal and unenforceable. However, the illegality of one clause in a collective bargaining agreement does not render the whole agreement invalid. *Chattanooga Mailers Union, Local No. 92 v. Chattanooga News–Free Press Co.*, 524 F.2d 1305 (6th Cir.1975); *see also Perma–Line Corp. of America v. Sign Pictorial & Display Union*, 639 F.2d 890, 894–95 (2d Cir.1981) (collective bargaining agreement provision that violates federal labor law is unenforceable and void, and cannot form the basis for any arbitration award).

for the case at bar. He commented that "many arbitrators apply the more stringent standard of 'beyond a reasonable doubt'" to cases involving moral turpitude. The company claimed that Cather was discharged for dishonesty. *Id.* at pg. 4.

Here, Article IV of the 1989–1991 Collective Bargaining Agreement is in dispute. The maintenance of membership clause that defendants claim is illegal formed no basis of the arbitration award at issue here. Consequently, the fact that there does exists an alleged illegal provision in the collective bargaining agreement does not vitiate the arbitration award since that provision formed no basis of the award.

In *Sullivan, Long, & Hagerty, supra,* the court set forth the standard for the judicial review of labor arbitrations. This review is limited to a determination of " 'whether an award is irrational, whether it fails to draw its essence from the collective bargaining agreement or whether it exceeds the scope of the arbitrator's authority.' " *Sullivan, Long, & Hagerty,* 980 F.2d. at 1426 (citations omitted).

After examining each of the defendants' claims, the court concludes, based on the foregoing analysis, that there is nothing irrational about the arbitrators award, the award drew its essence from the collective bargaining agreement, and the arbitrator did not exceed his authority. Therefore, even absence the fact that Southern Coupon failed to appeal the arbitrator's awards within 10 days, the award itself is enforceable.

## PIERCING THE CORPORATE VEIL

### SUCCESSOR LIABILITY

■ Plaintiff contends that American Coupon is the successor of Southern Coupon. There is no evidence that American Coupon hired a majority of its employees from among the former employees of Southern Coupon. In *NLRB v. Burns International Detective Agency,* 406 U.S. 272, 278–279, 92 S.Ct. 1571, 1577–1578, 32 L.Ed.2d 61 (1972), the court reasoned that a successor corporation had a duty to bargain in good faith if it hired a majority of its employees from the previous corporation. Under *Burns,* American Coupon is not the successor to Southern Coupon since it did not hire a majority of its employees from among former employees of Southern Coupon. *See also Fall River Dyeing & Finishing Corp. v. NLRB.,* 482 U.S. 27, 36–41, 107 S.Ct. 2225, 2232–2235, 96 L.Ed.2d 22 (1987).

## ALTER EGO

■ Plaintiff also contends that American Coupon is the alter ego of Southern Coupon. Alter ego status is found when two corporations have substantial identity of management, business purpose, operation, equipment, customers, and supervision, as well as ownership. *Eichleay Corp. v. Iron Workers,* 944 F.2d 1047, 1059 (3rd Cir.1991); *Continental Radiator Corp.,* 283 NLRB 34 (1987); *Advance Electric,* 268 NLRB 1001, 1001 (1984).

Plaintiff submitted the following evidence regarding American Coupon's alleged alter ego status. Plaintiff alleges the following facts illustrate that American Coupon is the alter ego of Southern Coupon.

(a) *OWNERSHIP:* American Coupon is owned by Helga Brown, Ursula Quick (Helga's daughter), and Bill Wade. Southern Coupon is owned one-hundred percent by Fred Brown. (Brown Depo. pg. 13; Quick Depo. pg. 68, 24).

(b) *TIMING:* American Coupon began operations contemporaneously with the closing of Southern Coupon (September 25, 1992). Plaintiff concedes that there were a few days of overlap.

(c) *WORK IN PROGRESS:* American Coupon was receiving orders on September 21 and 22, 1992 while Southern Coupon was still in business and before American Coupon had presses to operate. American Coupon used Southern Coupon's order forms to begin its business. (Plaintiff's Exhibit 8). Plaintiffs argue that American Coupon was able to fill its order so quickly because it used Southern Coupon's coupon books.

(d) *EQUIPMENT:* American Coupon purchased a substantial portion of its equipment form Southern Coupon. American Coupon also purchased Southern Coupon's inventory consisting of paper, ink and Stock items. (Quick Depo. pgs. 10, 19, 28, 67; Lisenby pg. 2).

(e) *PERSONNEL:* American Coupon hired a number of Southern Coupon Managers, supervisors and employees. Currently,

ten of American Coupon's twenty employees worked for Southern Coupon. Plaintiff argues that American Coupon hired only the younger employees from Southern Coupon in an effort to weed out the older employees whose support for the union was stronger. (Lisenby Affidavit; Cather Affidavit).

(f) *CUSTOMERS:* Southern Coupon refers customers to American Coupon. (Brown Depo. pg. 38). Moreover, a former Southern Coupon phone number is now at American Coupon. (Quick Depo. pg. 52).

Defendants contend that many of these factors point against the alter ego conclusion i.e. separate ownership, separate overall management, and different building.[11] For instance, Fred Brown owns none of the stock of American Coupon and has no management authority. (Steven Quick Affidavit). Whereas, Fred Brown owned all of the stock of Southern Coupon and was in overall charge of Southern Coupon as its president. (Fred Brown Affidavit). Furthermore, Helga Brown provided a portion of the operating capital for American Coupon, not Fred Brown. (Quick Affidavit). Moreover, American Coupon operates its business in a building located at 320, Third Avenue West, Birmingham, Alabama. Southern Coupon operated in a building located at 1719, 4th Avenue South, Birmingham, Alabama. (Brown Affidavit).

In the case at bar, both parties simultaneously are arguing that there is no genuine issue of fact. *See Rains v. Cascade Industries, Inc.,* 402 F.2d 241, 245 (3rd Cir.1968) (cross-motions for summary judgment does not constitute an agreement that if one motion is rejected other is granted). In *Griffis v. Delta Family–Care Disability,* 723 F.2d 822, 824 (11th Cir.1984), the court examined whether, on cross-motions for summary judgment, a trial was necessary. The Eleventh Circuit stated:

[i]f the record presents factual issues, the court must deny the motion and proceed to trial ... a court may discover questions of fact even though both parties, in support of cross-motions for summary judgment, have

asserted no such questions exist ... issues raised by the parties on cross-motions for summary judgment ... must have no doubt as to the relevant facts that are beyond dispute.

*Id.* (citations omitted). In *Continental Radiator Corp,* 283 NLRB 34 (1987) the NLRB set forth the standard to determine whether one corporation is the alter ego of the other. The Board stated that:

it will find alter ego status where two employers have 'substantially identical management, business purpose, operation, equipment, customers, and supervision, as well as ownership.' In addition, the Board considers whether there has been any hiatus in operations, whether the companies use the same building and 'whether the purpose behind the creation of the alleged alter ego was legitimate or whether, instead, its purpose was to evade responsibilities under the Act.' No one factor is determinative of alter ego status.

*Id.* (citations omitted); *see generally Electrical Workers v. 163 Pleasant Street Corp.,* 960 F.2d 1080, 1091 (1st Cir.1992) (principle of limited liability is a pillar of corporate law).

The undisputed facts indicate that American Coupon was owned and operated independently of Southern Coupon. Moreover, American Coupon, acquired certain equipment and customers from Southern Coupon.

The facts, however, are not undisputed on whether or not American Coupon was created to evade Southern Coupon's union contract. This contract expired on September 30, 1992, and American Coupon started operating on September 24, 1992. Plaintiff submits the affidavit of Jerry Lisenby and Robert Cather as evidence of the fact that American Coupon was created to evade Southern Coupon's union contract. Lisenby stated that American Coupon only hired younger workers from Southern Coupon so as to weed out the older employees whose support for the union was stronger. (Lisenby Affidavit). Moreover, Lisenby and Cather stated that American Coupon offered jobs only to

---

11. Defendants concede, however, that use of the same equipment may point in the opposite direction.

Southern Coupon's non-union employees. Defendants argue that Fred Brown decided to go out of business for reasons of health, desire to retire, and money difficulties and the younger generation, with help from Helga, created American Coupon. At this same time the contract between Southern Coupon and the union expired. Consequently, Quick and Ursula raised some money, found a bargain in a building, and started American Coupon. American Coupon argues that it was under no obligation to hire employees from Southern Coupon. (Brown Affidavit).

Neither party has "produce[d] evidence that shows [the absence of] a genuine issue of material fact." *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir.1988). The facts surrounding plaintiff's claim that American Coupon is the alter ego of Southern Coupon are not beyond dispute. *Griffis, supra.* American Coupon and Southern Coupon are owned and operated by separate parties. The two companies, however, have substantially the same customers and equipment. Moreover, Southern Coupon ceased doing business shortly after American Coupon started doing business. Additionally, it is unclear whether the purpose behind the creation of American Coupon was legitimate based on the affidavits of Robert J. Cather and Jerry Lisenby.

### FEES

■ Plaintiff claims that it should be awarded fees by Southern Coupon and/or American Coupon. In *Intern. Ass'n of Machinists v. Texas Steel Co.*, 538 F.2d 1116, 1121 (5th Cir.1976) stated that costs and attorney's fees are awardable when a challenge to an arbitrator's decision is without justification. Moreover, in *Int'l Union of District 50 etc. v. Bowman Transportation Inc.*, 421 F.2d 934, 935 (5th Cir.1970), the court authorized the district court to award attorneys' fees where it determines that a party has "without justification" refused to follow an arbitrator's award.

In *Encino Shirt Co. v. ILGWU*, 108 LRRM 2723 (N.D.Ala.1980), the court defined "without justification." The court stated that "to take an unreasonable, *clearly wrong* position—no matter how sincere the belief behind it—is . . . 'without justification'." (emphasis supplied). Here, defendants did not take a "clearly wrong" position in refusing to follow the arbitrator's award. Southern Coupon went out of business approximately four months after the arbitrator rendered its decision. Moreover, Southern Coupon was under the impression, that was not "clearly wrong" that it did not have to file an appeal to the arbitrator's decision within 10 days. Moreover, with regard to American Coupon, there are genuine issues of material fact that remain as to whether or not American Coupon is the alter ego of Southern Coupon. Regardless, American Coupon did not act "without justification" in refusing to follow the arbitrator's award since it has not yet been found to be the alter ego of Southern Coupon.

### CONCLUSION

Plaintiff's Motion for Summary Judgment will be **GRANTED** as to the enforceability of the arbitration award against Southern Coupon and **DENIED** as to the alter ego and successor liability claims and award for fees.