LOCAL 514, TRANSPORT WORKERS
UNION OF AMERICA;  et al.,
Plaintiffs,

v.

Frank KEATING, Governor of
the State of Oklahoma,
Defendant,

and

Oklahomans for Jobs and Justice, Inc.,
Kent Duvall, Michelle McKenzie, and
Stephen Weese, Defendants–Interve-
nors.

No.  CIV–01–633–S.

United States District Court,
E.D. Oklahoma.

June 5, 2002.

James E. Frasier, Steven R. Hickman, Tulsa, Eddie Harper, Gene Stipe, McAlester, Gerald B. Ellis, James C. Thomas, Tulsa, OK, Laurence E. Gold, Washington, DC, for plaintiffs.

Stefan K. Doughty, Office of the Attorney General, D. Kent Meyers, Mary H.

Tolbert, Crowe & Dunlevy, John N. Hermes, Dee A. Replogle, Oklahoma City, OK, R. Marc Nuttle, Norman, OK, for the defendants.

## ORDER

SEAY, Chief Judge.

Plaintiffs [1] bring this action against Defendant Frank Keating, Governor of the State of Oklahoma, challenging the constitutionality of Oklahoma's newly-enacted right-to-work law. It is Plaintiffs' position that Oklahoma's right-to-work law should be declared invalid because it is substantially preempted under the Supremacy Clause of Article VI, Clause 2 of the United States Constitution [2] and, further, because it violates several provisions of the Oklahoma Constitution. The parties [3] have agreed to submit this matter to the court for resolution on their respective motions for summary judgment. For the reasons set forth below, the court finds that Plaintiffs' federal constitutional attack against Oklahoma's right-to-work law has no merit and must be rejected. In addition, the court declines to exercise supplemental jurisdiction over the remaining state constitutional complaints asserted by Plaintiffs.

### Background

The formation of Oklahoma's right-to-work law began in April of 2001, when the

1. Plaintiffs consist of Local 514, Transport Workers Union of America; Local 627, International Union of Operating Engineers; Local Lodge 898, International Association of Machinists and Aerospace Workers; Local 584, International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers; Local 916, American Federation of Government Employees; Local 1358, National Association of Letter Carriers; Local 1558, International Union of United Automobile, Aerospace & Agricultural Implement Workers of America; Oklahoma State AFL–CIO; and Edwards Pipeline Services, Inc.

2. Article VI, Clause 2 of the United States Constitution makes federal law "the supreme Law of the Land, and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

3. Subsequent to the filing of Plaintiffs' amended complaint, the court granted permission for movants, Oklahomans For Jobs and Justice, Inc., Kent Duvall, Michelle McKenzie, and Stephen Weese, to intervene as Defendants.

Senate and House of Representatives of the First Session of the 48th Oklahoma Legislature approved Senate Joint Resolution No. 1, which directed the Oklahoma Secretary of State "to refer to the people for their approval or rejection" a proposed amendment to Article XXIII of the Oklahoma Constitution. Plaintiffs' Amended Complaint, ¶ 15. A special election was subsequently arranged by the Secretary of State for the sole purpose of voting on the proposed amendment, denominated as State Question No. 695 ("SQ 695"). On September 25, 2001, the people of Oklahoma approved SQ 695 by a vote of 447,072 to 378,465, a margin of 54% to 46%. SQ 695, which amended the Oklahoma Constitution by adding Article 23, § 1A, became effective on September 28, 2001.

As set forth in Article 23, § 1A, Oklahoma's right-to-work law provides:

A. As used in this section, "labor organization" means any organization of any kind, or agency or employee representation committee or union, that exists for the purpose, in whole or in part, of dealing with employers concerning wages, rates of pay, hours of work, other conditions of employment, or other forms of compensation.

B. No person shall be required, as a condition of employment or continuation of employment, to:

1. Resign or refrain from voluntary membership in, voluntary affiliation with, or voluntary support of a labor organization;

2. Become or remain a member of a labor organization;

3. Pay any dues, fees, assessments, or other charges of any kind or amount to a labor organization;

4. Pay to any charity or other third party, in lieu of such payments, any amount equivalent to or pro rata portion of dues, fees, assessments, or other charges regularly required of members of a labor organization; or

5. Be recommended, approved, referred, or cleared by or through a labor organization.

C. It shall be unlawful to deduct from the wages, earnings, or compensation of an employee any union dues, fees, assessments, or other charges to be held for, transferred to, or paid over to a labor organization unless the employee has first authorized such deduction.

D. The provisions of this section shall apply to all employment contracts entered into after the renewal date of this section and shall apply to any renewal or extension of any existing contract.

E. Any person who directly or indirectly violates any provision of this section shall be guilty of a misdemeanor.

A review of Oklahoma's right-to-work law reveals that its core provisions can be found in subsections (B)(1)-(4), which prohibit agency and union shops. Other subsidiary provisions of the law are designed to prohibit specific practices which tend to promote union security. Article 23, § 1A(B)(5)(prohibiting the use of exclusive hiring halls); Article 23, § 1A(C)(prohibiting employer from deducting union dues, fees, assessments, and other charges from employee's wages, earnings, or compensation without first obtaining employee's consent).

In their eleven-count amended complaint, Plaintiffs seek permanent declarato-

ry and injunctive relief rendering the provisions of Article 23, § 1A void. With respect to their Supremacy Clause arguments, Plaintiffs contend several sections of Article 23, § 1A are preempted by the following federal labor statutes: the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 *et seq.;* the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 141 *et seq.;* the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.;* the Civil Service Reform Act ("CSRA"), 5 U.S.C. § 7101 *et seq.;* and the Postal Reorganization Act ("PRA"), 39 U.S.C. § 1201 *et seq.* The specific preemption-based claims as set forth in the amended complaint are as follows: Section 1A(C) and Section 1A(E) are preempted under the Supremacy Clause and the NLRA/LMRA (Count I); Section 1A(C) and Section 1(A)(E) are preempted under the Supremacy Clause and the RLA (Count II); Section 1A(C) and Section 1A(E) are preempted under the Supremacy Clause and the PRA (Count III); Section 1A(C) and Section 1A(E) are preempted under the Supremacy Clause and the CSRA (Count IV); Section 1A(B)(5) and Section 1A(E) are preempted under the Supremacy Clause and the NLRA/LMRA (Count V); Section 1A(B)(1)-(4) and Section 1A(e) are preempted under the Supremacy Clause and the RLA (Count VI); Section 1A(B)(1)-(4) and Section 1A(E) are preempted under the Supremacy Clause and the CSRA (Count VII); Article 23,

§ 1A is contrary to federal law that operates exclusively on federal enclaves, including the NLRA/LMRA, RLA, CSRA, and PRA, and therefore violates Article I, Section 8, Clause 17 of the United States Constitution (Count VIII); and the complete or partial invalidation of Article 23, § 1A renders it invalid in its entirety because, under Oklahoma law, it is not severable.[4]

### Construction and Scope of Oklahoma's Right–To–Work Law

Oklahoma's right-to-work law is the decision of the majority of those voting on the long-standing issue of whether membership in a labor organization should be a prerequisite to employment. Union security provisions in collective bargaining agreements act as the catalyst for this discussion and they bring to the forefront "a conflict between two firmly-held American beliefs; The belief that a worker should not be required to support an organization which he may oppose, and the belief that a worker should not be a 'free rider' who takes advantage of benefits secured by a union without contributing his share of its support." *Higgins v. Cardinal Mfg. Co.,* 188 Kan. 11, 360 P.2d 456, 460, *cert. denied,* 368 U.S. 829, 82 S.Ct. 51, 7 L.Ed.2d 32 (1961). Federal law has evolved to the point where this conflict has been resolved against compulsory unionism. "Closed shop" agreements, whereby membership in a union is required for

---

**4.** Counts IX and X of the amended complaint are Plaintiffs' claims seeking to invalidate Article 23, § 1A on the basis that it violates specific provisions of the Oklahoma Constitution. In particular, Plaintiffs challenge Article 23, § 1A as embracing more than one general subject in violation of Article 24, § 1 of the Oklahoma Constitution and as a "special law" in violation of Article 5, § 59 of the Oklahoma Constitution. Also, in Counts I through VIII, Plaintiffs allege violations of 42

U.S.C. § 1983. No substantive claims are asserted under section 1983, however, as it is merely the procedural mechanism for Plaintiffs to assert their federal constitutional claims in Counts I through VIII. *See Dixon v. City of Lawton, Okl.,* 898 F.2d 1443, 1448 (1990)(section 1983 does not create any substantive rights, it is a procedural statute which provides a remedy for the deprivation of existing rights).

employment, are illegal under the LMRA, 29 U.S.C. §§ 158(a)(3) and (b)(2). *See National Labor Relations Board v. Local Union No. 55*, 218 F.2d 226, 232 (10th Cir. 1954)("closed shop" agreement is an illegal union-security agreement); *Graphics Communications Intern. Union, Local 121–C v. Southern Coupon, Inc.*, 852 F.Supp. 970, 975 (M.D.Ala.1993)("maintenance of membership" or "closed shop" security agreements are illegal and unenforceable). Less stringent forms of union security agreements, however, are still authorized under section 158(a)(3) of the LMRA. So-called "union shops", where the employee is required to join the contracting union within a certain period after hire, and "agency shops", where the employee is not required to join the union but must pay union dues in exchange for the representation received from the union are allowed under federal law. 29 U.S.C. § 158(a)(3). Thus, section 158(a)(3) strikes a balance—it abolishes the "closed shop," but it also authorizes certain union security agreements to combat the reality that many employees will attempt to share in the benefits of collective bargaining agreements without paying their share to the union which bargained on their behalf. *National Labor Relations Board v. General Motors Corporation*, 373 U.S. 734, 740–41, 83 S.Ct. 1453, 10 L.Ed.2d 670 (1963).

Against this backdrop of authorized union security agreements, states' right-to-work laws have been sanctioned by Congress through the enactment of section 164(b) of the LMRA. Congress yielded to the states the authority to prohibit union security agreements by providing:

Nothing in this subchapter shall be construed as authorizing the execution or application of agreements requiring membership in a labor organization as a condition of employment in any State or Territory in which such execution or application is prohibited by State or Territorial law.

29 U.S.C. § 164(b). As the plain language of section 164(b) indicates, states are permitted to enact right-to-work laws which are at odds with federal laws authorizing union security agreements. While it is undeniable that a conflict could develop between state right-to-work laws prohibiting union security agreements and federal laws authorizing such agreements, "it is a conflict sanctioned by Congress with directions to give the right of way to state laws barring the execution and enforcement of union-security agreements." *Retail Clerks Int'l Ass'n v. Schermerhorn*, 375 U.S. 96, 103, 84 S.Ct. 219, 11 L.Ed.2d 179 (1963). This exemption provided under section 164(b) of the LMRA applies generally to employment in the private sector. In other specific employment contexts such as the RLA (railroad and airline employees), the CSRA (federal executive agency employees), and the PRA (U.S. Postal Service employees), no exemption similar to section 164(b) exists. Thus, application of the State of Oklahoma's prohibition against union security devices is necessarily limited to those employees falling under the purview of the LMRA.

Plaintiffs argue otherwise and would have the court interpret Oklahoma's right-to-work law to apply to those employees governed by the RLA, the CSRA, the PRA, as well as those individuals employed at facilities within federal enclaves in the State of Oklahoma.[5] By doing so, Plaintiffs attempt to create a conflict between

---

**5.** Plaintiffs identify two federal enclaves in their amended complaint—Vance Air Force Base in Enid, Oklahoma, and Tinker Air Force Base in Oklahoma City, Oklahoma. In

the provisions of these federal laws and the provisions of Oklahoma's right-to-work law, with the desired outcome being the preemption of Oklahoma's law. The court declines the invitation to so construe the provisions of Oklahoma's law.

■ In determining whether a state law conflicts with a federal law and is therefore preempted, the United States Supreme Court has set forth "a two-step process of first ascertaining the construction of the two statutes and then determining the constitutional question whether they are in conflict." *Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 317, 101 S.Ct. 1124, 67 L.Ed.2d 258 (1981). Rules of statutory construction dictate that the court adopt a construction of the state law which will uphold its validity as opposed to one which will render it void by reason of federal preemption. *In re Bissell*, 255 B.R. 402, 418 (Bankr.E.D.Va.2000); *see TXO Production Corp. v. Oklahoma Corporation Commission*, 829 P.2d 964, 968–69 (Okla.1992)(general purpose of statute guides determination of legislative intent; a reasonable and rational construction of statute is preferred over one which leads to an absurd result); *see also Riva v. Com. of Mass.*, 871 F.Supp. 1511, 1519 (D.Mass. 1994)(when justified by statutory language, federal courts should interpret potentially conflicting federal and state laws "in such a manner as not to render the actions of the state legislature null and void"), *aff'd in part, rev'd in part*, 61 F.3d 1003 (1st Cir.1995).

■ Application of these principles leads the court to the conclusion that Oklahoma's right-to-work law does not apply to those individuals subject to the RLA, the CSRA, or the PRA. Nor does it have any application to federal enclave employees. Although the language of § 1A(B) makes it applicable to every "person," there are certain limitations which must be imposed on the scope of coverage under § 1A(B) in order to account for existing Supreme Court jurisprudence regarding the permissible parameters of state employment relations laws.

Under the RLA, employers and labor organizations may enter into agreements requiring employees to become members of the organization "notwithstanding any statute or law ... of any State." 45 U.S.C. § 152, Eleventh(a). State right-to-work laws must therefore yield to this provision of the RLA. *Railway Employees' Dept. v. Hanson*, 351 U.S. 225, 227–38, 76 S.Ct. 714, 100 L.Ed. 1112 (1956). Likewise, under the CSRA and the PRA, Congress has comprehensively regulated the employment of those employed by the federal government through its executive departments and agencies, and the U.S. Postal Service. 5 U.S.C. § 7101, *et seq.*; 39 U.S.C. §§ 1201–1209. Rules of statutory construction dictate that the court should find the federal government exempt from the application of state statutes which attempt to regulate any collective bargaining agreement to which the federal government is a party. *See Hancock v. Train*, 426 U.S. 167, 179, 96 S.Ct. 2006, 48

Count VIII of their amended complaint, Plaintiffs contend that with respect to individuals employed on federal enclaves, Oklahoma's right-to-work law violates Article I, Section 8, Clause 17 of the United States Constitution, which provides:

Congress shall have Power ... [t]o exercise exclusive Legislation in all Cases whatsoever ... over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings.

L.Ed.2d 555 (1976)(in order to subject federal installations and activities to regulation by the States, there must exist "specific congressional action" making the authorization of state regulation "clear and unambiguous"). Any construction which would result in the direct or indirect recognition of state regulation of the federal government's operations in the area of federal employment would also run afoul of the Supremacy Clause. *Id.* at 178–80, 96 S.Ct. 2006. Moreover, before the federal government can be subjected to prosecution for violation of a state penal statute, such as that reflected in § 1A(E) declaring violations of Oklahoma's right-to-work law a misdemeanor, the United States must unequivocally waive its sovereign immunity. *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980)(as a sovereign, the United States is immune from suit; a waiver of its immunity cannot be implied, but must be unequivocally expressed). No waiver of such immunity exits under either the CSRA or the PRA. Finally, with respect to federal enclave employees, the State of Oklahoma is precluded from enforcing its penal laws in employment settings where the United States possesses exclusive jurisdiction. *Lord v. Local Union No.2088, International Brotherhood of Electrical Workers, AFL–CIO,* 646 F.2d 1057, 1062 (5th Cir. 1981), *cert. denied,* 458 U.S. 1106, 102 S.Ct. 3483, 73 L.Ed.2d 1366 (1982).

In sum, it is simply not a reasonable construction to extend the scope of Oklahoma's right-to-work law to include those individuals subjected to regulation under the RLA, the CSRA, the PRA, and federal enclave jurisprudence. Consequently, the court interprets Oklahoma's right-to-work law as excluding from its coverage those individuals subject to the RLA, the CSRA,

the PRA, as well as those individuals subject to federal enclave jurisdiction. From this conclusion, it follows that the preemption suggested by Plaintiffs with respect to these individuals has no application to any portion of Oklahoma's right-to-work law. Defendants are therefore entitled to the entry of judgment in their favor on Counts II, III, IV, VI, VII, and VIII as such counts fail to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6).

### Preemption of Subsections (B)(5) and (C) of Article 23, § 1A

The remaining arguments for preemption are found in Counts I and V of the amended complaint, wherein Plaintiffs allege subsections (B)(5) and (C) of Article 23, § 1A are preempted by the provisions of the NLRA/LMRA. Subsection (B)(5) (Count V) is Oklahoma's attempt to prohibit the use of exclusive hiring halls; subsection (C) (Count I) is Oklahoma's attempt to prohibit employers from deducting union dues, fees, assessments, or other charges from an employee's wages, earnings, or compensation without the employee's prior authorization.

■ Defendants acknowledge that section 158(a)(3) of the LMRA permits exclusive union hiring halls provided such halls do not discriminate between members and non-members. *Teamsters Local 357 v. NLRB,* 365 U.S. 667, 81 S.Ct. 835, 6 L.Ed.2d 11 (1961). As a result, courts which have interpreted section 164(b) of the LMRA in this context have held that it does not grant the States the authority to prohibit non-discriminatory exclusive hiring halls. *Laborers' Int'l Union Local 107 v. Kunco, Inc.,* 472 F.2d 456, 458–59 (8th Cir.1973); *NLRB v. Tom Joyce Floors, Inc.,* 353 F.2d 768, 770–71 (9th Cir.1965);

*NLRB v. Houston Chapter Ass'd Gen'l Contractors,* 349 F.2d 449, 451 (5th Cir. 1965), *cert. denied,* 382 U.S. 1026, 86 S.Ct. 648, 15 L.Ed.2d 540 (1966). Oklahoma has clearly attempted to prohibit the use of exclusive hiring halls by enacting subsection (B)(5), which provides that "[n]o person shall be required, as a condition of employment or continuation of employment, to: ... [b]e recommended, approved, referred, or cleared by or through a labor organization." Consequently, the court declares subsection (B)(5) to be preempted by federal law as it is outside the grant of authority contained in section 164(b) of the LMRA. *See Oil, Chem. & Atomic Workers Int'l Union v. Mobil Oil Corp.,* 426 U.S. 407, 417, 96 S.Ct. 2140, 48 L.Ed.2d 736 (1976)(the laws section 164(b) allows states to enact do not relate to the hiring process, but rather, are related to the "post-hiring employer-employee-union relationship").

Turning to subsection (C) of Oklahoma's right-to-work law, the court notes that this provision is an attempt to regulate payroll check-off arrangements for the deduction of union dues from an employee's paycheck and the employer's remittance of such dues to the union. The deduction and remittance of such dues under subsection (C) is permissible only if "the employee has first authorized such deduction." Under the LMRA, 29 U.S.C. § 186(c)(4), Congress has regulated such check-off arrangements by making it lawful for an employer to agree to pay to a labor organization:

> money deducted from the wages of employee in payment of membership dues in a labor organization: *Provided,* That the employer has received from each employee, on whose account such deduc-

tions are made, a written assignment which shall not be irrevocable for a period of more than one year, or beyond the termination date of the applicable bargaining agreement, whichever occurs sooner.

A comparison of these provisions reveals a conflict which interferes with the negotiations between the employer and the union over check-off arrangements. Under federal law, check-off arrangements are valid provided they are in writing and are not irrevocable for more than one year, or beyond the term of the bargaining agreement, whichever first occurs. Oklahoma's provision, however, regulates check-off arrangements only by requiring that the employee "first authorize[ ] such deduction." As no term is imposed under subsection (C), any arrangement would necessarily be revocable at will by the employee. As a result, it conflicts with the federal requirement by altering the federally imposed requirement that any check-off arrangement not be irrevocable for more than one year, or beyond the term of the bargaining agreement, whichever first occurs. *See SeaPak v. Industrial Technical and Professional Employees,* 300 F.Supp. 1197, 1200 (S.D.Ga.1969), *aff'd,* 423 F.2d 1229 (5th Cir.1970), *aff'd,* 400 U.S. 985, 91 S.Ct. 452, 27 L.Ed.2d 434 (1971)(state law requiring employee authorization of check-off arrangement only if employee authorization was revocable at will was not permitted under section 164(b) as "[t]he area of check off of union dues has been federally occupied to such an extent ... that no room remains for state regulation in the same field."). The court therefore concludes that subsection (C) is preempted by federal law as it is outside the authority granted under section 164(b) of the LMRA.[6]

---

**6.** In their motion for summary judgment,

Plaintiffs raise for the first time two addition-

### Severability

Having determined that two provisions of Oklahoma's right-to-work law, subsections (B)(5) and (C), conflict with and are preempted by the LMRA, the court must next determine whether these provisions are severable from the remainder of Article 23, § 1A. It is Plaintiffs' position that Article 23, § 1A, as a whole, is invalid given the invalidity of subsections (B)(5) and (C) and the absence of any severability clause. In essence, Plaintiffs are asking this court to invalidate a provision of the Oklahoma Constitution, approved by the majority of the electorate of the State of Oklahoma, based on the invalidity of two non-core provisions of the law. It would be improper to do so.

As noted by the Tenth Circuit Court of Appeals, severability is an issue of state law. *Panhandle Eastern Pipeline Co. v. State of Oklahoma, ex rel. Commissioners of the Land Office*, 83 F.3d 1219, 1229 (10th Cir.1996). Under Oklahoma law, the existence of a severability clause in the particular law under consideration is not determinative of the issue, *Ethics Commission of Oklahoma v. Cullison*, 850 P.2d 1069, 1077 (Okla.1993), but rather, "the determination of severability must be guided by Okla.Stat.tit. 75, § 11a." *Panhandle*, 83 F.3d at 1229. In this regard, section 11a provides that "the provisions of every act or application of the act shall be severable" unless the act contains a nonseverability clause. Section 11a further provides:

> If any provision or application of the act is found to be unconstitutional and void, the remaining provisions or applications of the act shall remain valid, unless the court finds:
>
> a. the valid provisions or applications of the act are so essentially and inseparably connected with, and so dependent upon, the void provisions that the court cannot presume the Legislature would have enacted the remaining valid provisions without the void one; or
>
> b. the remaining valid provisions or applications of the act, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

---

al preemption arguments not contained within their amended complaint. *See Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 797 n. 26 (10th Cir.1998)(court can consider issues raised for first time in response to a motion for summary judgment as a motion to amend the complaint). These two new arguments are challenges to subsections (B)(1) and (B)(3) of Oklahoma's right-to-work law. The court rejects both challenges. With respect to subsection (B)(1), Plaintiffs argue that under section 164(b) of the LMRA states only have the authority to prevent employers from requiring membership in labor organizations as a condition of employment—they do not have authority to prevent employers from prohibiting union membership as a condition of employment. The court disagrees. The United States Supreme Court has upheld state right-to-work laws which prohibit discrimination in employment based on both union membership and non-membership alike. *Lincoln*

*Federal Labor Union 19129 v. Northwestern Iron & Metal Co.*, 335 U.S. 525, 69 S.Ct. 251, 93 L.Ed. 212 (1949). Likewise, the court rejects Plaintiffs' challenge to subsection (B)(3). Plaintiffs argue subsection (B)(3) regulates the fees unions can charge to nonmembers who participate in exclusive hiring halls. The court disagrees with Plaintiffs' interpretation. Subsection (B)(3) prohibits the payment of "dues, fees, assessments, or other charges of any kind or amount to a labor organization" by any person "as a condition of employment or continuation of employment." On its face, this provision clearly does not attempt to regulate any phase of the hiring process as urged by Plaintiffs. Thus, subsection (B)(3) does not apply to the payment of any fees which may be charged by unions as part of the exclusive hiring hall process.

With this standard serving as a backdrop, the court must analyze Article 23, § 1A to determine if its invalid provisions—subsections (B)(5) and (C)—render the law invalid in its entirety.

■ The court must determine if the valid provisions of Article 23, § 1A are "essentially connected" with the invalid provisions. Moreover, the court must ask whether the valid provisions, standing alone, are incapable of being executed in accordance with the legislative intent. The core provisions of Oklahoma's right-to-work law can be found in subsections (B)(1) through (4), which ban union and agency shop provisions in collective bargaining agreements. These provisions are certainly capable of being carried out in the absence of subsections (B)(5) and (C), which deal with exclusive hiring halls and check-off arrangements. The core provisions of Article 23, § 1A are not dependent on the invalid provisions to give them meaning and effect. The core provisions are capable of being executed without subsections (B)(5) and (C) being in effect. In sum, there is no interconnection or interdependence between the valid and invalid provisions of the law. Thus, it is certainly true to say that the law's core provisions banning union and agency shops would have been enacted notwithstanding the absence of the invalid provisions prohibiting exclusive hiring halls and regulating check-off arrangements.

These findings are consistent with the Oklahoma Supreme Court's application of severability principles to other legislative enactments. In *Cullison*, the Court was confronted with the issue of whether the Oklahoma Legislature's enactment of a comprehensive statutory scheme governing the ethical conduct of public officials and employees conflicted with and violated the provisions of the Oklahoma Constitution vesting power in the Ethics Commission to promulgate rules on the same subject matter. The Court analyzed the specific provisions of the legislative enactment, sections 2–49 inclusive of House Joint Resolution 1077 ("Resolution 1077"), and determined that the majority of such provisions were unconstitutional as they had "the effect of replacing the constitutional power and role of the Ethics Commission as a constitutional rule-making authority for regulating the conduct of state officials." *Cullison*, 850 P.2d at 1077. The Court did, however, uphold several provisions as within the legislature's authority after concluding that they were not in conflict with the Ethics Commission's authority.[7] After applying the severability principles of Okla.Stat.tit. 75, § 11a, the Court determined the constitutional provisions of Resolution 1077 were severable as they were "all capable of standing alone from the other sections" and they were not dependent upon the unconstitutional sections for their meaning or enforcement. *Id.*

7. These provisions involved the following subject matters: disapproval of the Ethics Commission's rules (Section 1), providing for an income tax deduction for persons contributing to a political party or candidate (Section 26), amending the Oklahoma Personnel Act (Section 33), regulating the ethical conduct in the employment of a lobbyist and providing for a criminal penalty (Section 36), and regulating the ethical conduct of legislators (Section 40). One other provision, Section 42, which regulated the ethical conduct of county officers and employees as well as state officers and employees, was held to be partially invalid and severable in application as to county officers and employees as the Oklahoma Legislature has the authority to regulate the ethical conduct of county officers and employees, even though it lacks such authority over state officers and employees. Other minor provisions, including those involving the effective dates of various section of Resolution 1077, were also found to be constitutional.

In contrast to the finding of severability in *Cullison,* the Oklahoma Supreme Court declared an entire legislative enactment to be invalid in *City of Oklahoma City v. State Ex Rel. Dept. of Labor,* 918 P.2d 26 (Okla.1995). In *City of Oklahoma City,* the Court held that Oklahoma's Little Davis–Bacon Act, Okla.Stat.tit., 40, §§ 196.1–196.14, was unconstitutional as it violated the provisions of the Oklahoma Constitution by delegating "the power to determine prevailing wages to a department of the federal government without setting standards for the exercise of that determination." *Id.* at 28. The Court declined to find the constitutional provisions of the Little Davis–Bacon Act severable from the unconstitutional delegation provision because "the valid sections of the Act, standing alone, are 'incomplete and incapable of being exercised in accordance with the legislative intent.'" *Id.* at 31 (quoting Okla.Stat.tit., 75, § 11a). The Court determined the legislative intent that a prevailing wage be paid to those employed on public works projects could not be carried out as there was "no one authorized to make the wage determination" given the unconstitutional delegation. As a result, the Court found severability to be inappropriate and it declared the entire statutory enactment invalid.

The Oklahoma Supreme Court's application of severability principles in *Cullison* is more appropriately suited to this court's review of the Oklahoma's right-to-work law. Similar to the constitutional provisions of Resolution 1077 at issue in *Cullison,* the core provisions of Oklahoma's right-to-work law are capable of standing alone and they are not dependent on the unconstitutional provisions for their meaning or enforcement. Moreover, unlike the unconstitutional provision in *City of Oklahoma City* involving the improper delegation of the determination of prevailing wages, neither of the unconstitutional provisions of Oklahoma's right-to-work law, subsections (B)(5) and (C), serves as a linchpin for the execution of the Oklahoma's right-to-work law. Consequently, this court concludes the principles of severability set forth under section 11a, in conjunction with the Oklahoma Supreme Court's construction and application of such principles in the context of other statutory enactments, counsels in favor of severability.

A similar analysis has been applied in the context of a state's right-to-work legislation. In *Local Union No. 415 of the International Brotherhood of Electrical Workers v. Hansen,* 400 P.2d 531 (Wyo. 1965), the Wyoming Supreme Court addressed the issue of severability in the context of a challenged provision to Wyoming's right-to-work act which prohibited, among other things, hiring halls.[8] The Court declared the hiring hall provision invalid, but upheld the remainder of the law:

> While it is true that the act fails to contain a provision commonly called a "separability clause," that is of no great importance. Such a clause accomplishes little more than to direct special attention to applicable legal principles.... In this jurisdiction we have consistently followed the rule that if the offending provisions of a statute are distinct and are not inseparably entangled with the remaining provisions of the act, and it also

---

**8.** The challenged provision provided "[n]o person is required to have any connection with, or be recommended or approved by, or be cleared through, any labor organization as a condition of employment or continuation of employment." Wy.Stat.Ann. § 27–7–112.

reasonably appears that the Legislature would have passed the act without the offending provisions, the valid portions will be left to stand, provided the remainder is sufficiently complete to accomplish the purpose of the act.

*Id.* at 537. Similar to this court's finding regarding the core provisions of Oklahoma's law, the Wyoming Supreme Court held that the underlying purpose of Wyoming's law was that "employment shall not be conditional upon membership or non-membership in, nor upon the payment or non-payment of money to, a labor organization." *Id.* The removal of the hiring hall provision in no way "jeopardized or diminished" the stated purpose or effect of the core provisions of the law. *Id.* Consequently, the Wyoming Supreme Court determined that the core provisions were severable and it upheld those portions of Wyoming's right-to-work law.

The court finds this analysis instructive. With respect to Oklahoma's right-to-work law, it is clear that the overriding purpose of the law was to ensure that employment was not conditioned upon one's membership in, voluntary affiliation with, or financial support of a labor organization or on a refusal to join, affiliate, or financially support a labor organization. Enforcement of the core provisions of the law which carry out this undeniable purpose is in no way hindered by the court's invalidation of the subsidiary provisions of subsections (B)(5) and (C). Consequently, the invalid provisions of Article 23, § 1A are severable from the core provisions and the remainder of Oklahoma's right-to-work law is upheld.

### State Constitutional Challenges

In Counts IX and X of their amended complaint, Plaintiffs raise state constitutional challenges to Oklahoma's right-to-work law. Under 28 U.S.C. § 1367(a), this court is conferred with supplemental jurisdiction over such claims to the extent the state law claims are so related to the claims forming the basis of the court's federal question jurisdiction that they form part of the same case or controversy. This court's exercise of such supplemental jurisdiction is, however, discretionary and the court may decline to exercise such jurisdiction over a state law claim where "the claim raises a novel or complex issue of State law." 28 U.S.C. § 1367(c)(1). Certainly, the issues raised by the parties with respect to Counts IX and X raise novel and complex issues of Oklahoma law concerning the constitutionality of Oklahoma's right-to-work law when assessed in light of specific provisions of the Oklahoma Constitution. Rather than attempting to predict how the Oklahoma Supreme Court would resolve these important issues of state constitutional law, it is appropriate for this federal court to decline to exercise supplemental jurisdiction over the state constitutional challenges presented in Counts IX and X.

### Conclusion

In large part, Plaintiffs attempt to invalidate Oklahoma's recently enacted right-to-work law by claiming a conflict exists with federal law. Plaintiffs also seek to have this court declare the entire law unconstitutional due to the invalidity of two minor provisions of the law. Neither attack has any merit. A reasonable and rational interpretation of Oklahoma's right-to-work law excludes from its coverage those individuals subject to the RLA, the CSRA, the PRA, as well as individuals subject to federal enclave jurisdiction. The preemption analysis suggested by Plaintiffs in Counts II, III, IV, VI, VII, and VIII of their amended complaint therefore has no application to these individuals and, in this context, it cannot operate to invalidate any provision of Oklahoma's right-to-work law. Consequently, Defendants are entitled to the entry of

judgment in their favor on Counts II, III, IV, VI, VII, and VIII as Plaintiffs have failed to state a claim upon which relief can be granted as to such counts. With respect to Counts I and V of their amended complaint, the court finds Oklahoma's attempt to prohibit the use of exclusive hiring halls, subsection (B)(5), and to regulate payroll check-off arrangements, subsection (C), are preempted under federal law. Plaintiffs are entitled to a judgment in their favor on Counts I and V declaring subsections (B)(5) and (C) preempted. Oklahoma law, however, dictates that subsections (B)(5) and (C) are severable from the remaining provisions of Oklahoma's right-to-work law. As a result, with the exception of the minor provisions of subsections (B)(5) and (C), Oklahoma's right-to-work law withstands constitutional scrutiny under the Supremacy Clause. Finally, the court declines to exercise supplemental jurisdiction over Plaintiffs' state constitutional challenges asserted in Counts IX and X, and those counts are dismissed without prejudice.